## Allen v. Carpenter.

*Tenancy: Notice to quit:* Under what circumstances a person holding over after foreclosure of a mortgage of the premises, will be entitled to notice to quit, *Quaere*, the Court being equally divided.

Discussion of the extent to which irregularities and errors in summary proceedings for possession of land render the proceedings void, and inadmissible as evidence.

*Heard July 10th. Decided November 8th.*

Error to Lenawee County Circuit.

This was an action of trespass *quare clausum*, for entering upon the premises of plaintiff and removing certain crops and committing certain other injuries.

Defendant plead the general issue, and gave notice of special matter.

The cause was tried by a jury, and a verdict rendered for defendant.

The plaintiff removed the same by writ of error.

The facts are stated in the opinion.

15 Mich. — c.

*A. L. Millerd, E. H. C. Wilson and A. F. Bixby*, for
  plaintiff.

1. The Court below erred in ruling out the evidence
of the proceedings before the Circuit Court Commissioner,
Hogaboam.

The appearance of the defendant, and pleading and
going to trial on the merits, waived any objection to the
complaint on account of the mistake in the date of the
jurat, and the other objections taken thereto.

And even if the proceedings should turn out to be
technically irregular, it was competent for the plaintiff to
show that he took such proceedings, in good faith, to
obtain what was lawfully his own, and which the defend-
ant was wrongfully withholding from him. The proceed-
ings, even if irregular, were equivalent to a demand of
the possession. They were notice to the defendant that
his remaining was against the will of the plaintiff, and
his resistance to them was equivalent to a refusal to yield
the possession.

The fact that the plaintiff commenced such a proceed-
ing in 1863, and prosecuted it until he was stopped by
the injunction, and then commenced again as soon as the
injunction was removed, effectually negatived the idea,
and rebutted any presumption that Prior's remaining there
and putting in the crops in question was with the assent
or tacit permission of the plaintiff.

2. The Court erred in receiving evidence that Prior
did not know of the foreclosure of the mortgage until
after the plaintiff purchased the farm.

This was wholly immaterial.

3. Prior did not acquire a tenancy, either at will or
by sufferance, by the omission of Clark, after the fore-
closure of his mortgage, to take immediate steps to dis-
possess him, and the charge on that point was erroneous.

He or his assignee was entitled to take the proceed-
ings at any time after the time of redemption expired,

without further notice, unless he had *done something or said something* that should amount to a consent for the mortgagee to remain, or to put in crops.   No such consent could be implied from his mere omission to take immediate steps to obtain possession.

If such consent could be implied from the fact of his standing by and allowing the mortgagor to put in crops without objection, knowing that he was doing so, it certainly could not without proof of knowledge on his part. There was no such proof, and if there had been any tending to show it, or from which it might be inferred, it should have been submitted to the jury.

The mortgagee is entitled, as against the mortgagor or his lessee, to the crops growing on the premises at the time of the foreclosure, and may maintain trespass against him for taking them away. — 8 *Wend.* 58; 1 *Leigh,* 297; 14 *Pick.* 238; 2 *Denio.* 174.

If he is entitled to the crop put in by the mortgagor before the foreclosure and while the latter is in rightful possession, certainly he is no less entitled to a crop put in after the foreclosure is complete, and while he is kept out of possession wrongfully by the mortgagor.

A mortgagor is not entitled to notice to quit, nor to emblements. — 1 *Hill. on Mortgages,* 120; 4 *Cow.* 266.

The statute gives a mortgagee this remedy by summary proceeding to recover possession against a mortgagor holding over. — 2 *C. L.* § 4985.

A mortgagee who purchases under a foreclosure sale may treat the mortgagor who holds over, either as a tenant or a trespasser, at his option. — 2 *B. Monr.* 158; 1 *Hill. on Mortgages,* 126.

The notice of sale on the foreclosure was equivalent to three months notice to quit. — 17 *Johns.* 300; 4 *Cow.* 266, 279.

And a delay to take these proceedings, though it were much longer than in this case, would not be a waiver of the notice. — 2 *Cow.* 547.

ALLEN *v.* CARPENTER.

No tenancy can arise by implication, under a party who has not the legal estate. — *Taylor's Land. and Ten.* § 25; 2 *Man. & Ry.* 303.

Prior's possession has been adverse to Clark and his assignee, ever since Clark's title accrued. He has all the time disputed and contested the right of the latter, and himself claimed the ownership. This estops him from claiming, now, that he was in as a tenant to Clark, being utterly inconsistent with such a claim. — 3 *Johns.* 422.

The possession of the plaintiff was rightful, whether the summary proceedings by which he obtained it were technically regular or not. He was legally entitled to the possession of the farm and of the crops growing on it, and having obtained it, he was entitled to retain the same, and to maintain trespass against any one not having a superior right, that should enter and disturb his possession.

This would be so even if he had entered forcibly, and under such circumstances as would render him criminally liable for a breach of the peace. — 36 *Maine,* 436.

*C. A. Stacy,* and *A. Howell,* for defendants.

The plaintiff claims right to possession, and power to evict under the proceedings before the Commissioner. We claim those proceedings are void because,

1. There was no complaint, such as is required by the statute. The jurisdiction of the Commissioner depends absolutely upon a complaint being made as required by law, on oath, setting forth certain particulars — and being delivered to the officer. — 2 *C. L.* 1324, § 12, 1325, § 13 *and* 14.

*a.* Here the complaint showed that on the 29th of September, 1861, certain facts existed, on which they asked process in 1864. — 10 *Mich.* 229, 235; 4 *Id,* 339.

*b.* The statute contemplates that the complaint and oath shall be made by the same person — *see* § 13 — either by the party or attorney or agent.

ALLEN *v.* CARPENTER.

In this case the complaint is made by Allen, the oath by Bixby — and the oath is only to his belief, though he swears that he is fully acquainted with the truth of the facts stated in the complaint.

2. But even if the complaint and summons are good under the statute, still the judgment is bad because it only finds the possession of Prior and his unlawful holding over against the just rights of the complainant, and does not find that the complainant was entitled to the possession of the premises. — *See cases above cited.*

If these proceedings were properly ruled out, if in fact there had been no proper foreclosure, then it follows that the plaintiff had no right to the possession of the lands, but was in possession by force, and therefore as a wrong doer. — 23 *Vt.* 630, 645.

The statute in Vermont is like ours, and the principles of this decision applies to our statute.

3. But we contend that even if the foreclosure is valid, and the proceedings before the Circuit Court Commissioner good, and the judgment a legal one, which authorized the issuing of the writ of possession, still the defendant Prior was entitled to possession until he received three months' notice to quit, because,

*a.* Estates at will or at sufferance can only be determined by three months' notice. — 2 *C. L. p.* 857, § 34; 17 *Mass.* 282, 287; 1 *Pick.* 43; 2 *Gray*, 226, 336; 2 *Id.* 70; 6 *Id.* 339.

*b.* By our statute, estates for years seem to have been abolished. — 2 *C. L.*, 818, §1.

*c.* At common law it was held that so long as the mortgagor remained in possession with the acquiescence of the mortgagee, and without any covenant for the purpose, he was a tenant at will. — 4 *Kent's Com.* 155, 156; 5 *Barn. and Ald.* 604; 1 *Term R.* 383; 2 *Doug. Mich.* 377.

*d.* In New York, notice to quit is necessary. — 2 *Johns.* 76; 4 *Id.* 215; 18 *Id.* 487.

*e.* After the time of redemption has expired, the mortgagor remains lawfully in possession as tenant at will or by sufferance, against the mortgagee who permits him to remain without objection.

This was the case before redemption, before the passage of the act of 1843, prohibiting actions of ejectment before foreclosure and the expiration of the time of redemption. The legal rights of the mortgagor is the same in both cases.

His equitable rights before foreclosure and redemption entitled him to redeem. — 1 *Mich. R.* 68.

His position, then, after expiration of time of redemption, was that of tenant at will, modified, of course, by the provisions of the statute. — 2 *C. L. p.* 1324, §12, *Clause* 3; *Id.* 1365, § 10.

The advertisement and filing of the papers in Register's office were only constructive notices so as to bar redemption. — 2 *C. L. Chap.* 157.

There was no actual notice of the foreclosure. The testimony shows that Prior had no notice until after the sale from Clark to Allen.

Prior, then, after March 22d, 1863 — the date of the expiration of the time of redemption — remained in possession lawfully, and not as a wrong doer, when Clark, knowing the fact of the foreclosure and expiration of the time of redemption allowed Prior, ignorant of both, to go on and put in crops, and continue to occupy the premises. He put him in the position of a tenant at will, or at least tenant by sufferance, and he was entitled to notice to quit by the terms of the statute.

COOLEY J.

The facts in this case are briefly the following:

One Clark being the owner of a mortgage given by Henry Prior on a farm owned by the latter, took proceedings for its foreclosure under the power of sale, and

caused the premises to be struck off to himself for the amount of the mortgage and costs. The time for redemption under the foreclosure expired March 22, 1863. Clark does not appear to have had any communication with Prior in regard to the foreclosure, either before or after the sale, and Prior testifies that he was not aware of the proceedings until the last of June or first of July, 1863. In the spring of that year he put in crops upon the farm as usual. On June 25, 1863, Clark, for a nominal consideration of about the foreclosure moneys and interest, conveyed the farm to Allen, who, within a few days thereafter, demanded and endeavored to obtain possession, but his proceedings for that purpose were resisted by Prior on the ground of irregularity and fraud in the foreclosure. In this contest, Prior proved unsuccessful, and Allen obtained judgment for the possession of the land September 2, 1864, in proceedings before a Circuit Court Commissioner under Chapter 150 of the Compiled Laws. The defendants in this case, who were Prior's neighbors, then turned out and assisted him to remove from the premises the crops which he had grown thereon, and which were ripened, and a part of them harvested at the date of the Commissioner's judgment. For this assistance the present action was brought.

The questions which become material for us to consider upon this record, are: *First*, whether the proceedings before the Commissioner are conclusive upon Prior, and determine for all collateral inquiries the right of Allen to possession of the land at the time those proceedings were commenced? and if not, and we are at liberty to go back of them, then *Second*, whether Prior, under the statute, was entitled to notice from Allen before he could be lawfully dispossessed by him?

1. The Circuit Judge held the proceedings before the Commissioner void for want of jurisdiction. It appears from the Commissioner's record — which was put in evidence — that the proceedings were commenced August 29th,

— in what year is not stated — and that they resulted in a judgment for the complainant September 2d, 1864. The complaint averred in the usual form that Allen was entitled to the possession of the premises, and that Prior held them unlawfully and against the right of complainant. It was not dated at all; but it was sworn to as required by the statute, and the jurat was dated August 29th, 1861. On its face, therefore, the complaint showed a right in Allen to the possession of the premises three years before the proceedings were commenced, but did not show or allege his right at any subsequent time.

There was a plea to this complaint, and it is argued that this is a waiver of any errors. Jurisdiction over the person may be given by voluntary appearance and plea; but jurisdiction of the subject matter cannot be given by consent. Even in those cases where parties are authorized to appear and enter a voluntary confession of judgment, it has been several times held in this State that the proceedings were void if any of the statutory requisites were omitted.— *Clark v. Holmes*, 1 *Doug.* 390 ; *Beach v. Botsford*, 1 *Doug.* 199 ; *Spears v. Carter*, 1 *Mich.* 19 ; *Wilson v. Davis*, 1 *Mich.* 156. But the present case is not one in which jurisdiction can be obtained by mere consent or confession, or in any other manner except through the complaint which the statute prescribes; and the fundamental rule, that the jurisdiction of special and limited tribunals must affirmatively appear on the face of the proceedings or they are void — ( *Chandler v. Nash*, 5 *Mich.* 409,) — has always been applied to these summary trials with great strictness. In the two cases of *Bush v. Dunham*, 4 *Mich.* 339, and *Bryan v. Smith*, 10 *Mich.* 229, the defect in the proceedings was precisely the same as in this case: a failure in the complaint to show a right to possession in the plaintiff at the time it was presented to the Commissioner; and in both, the judgment was held void. In the case last named the complaint averred that

the complainant became entitled to the possession of the premises at a time mentioned, which was some fourteen months before the date of the complaint; but it was held that an express allegation of the existing right of the complainant could not be dispensed with. Under these decisions it seems to me impossible to sustain these proceedings, and that the appearance and plea of the defendant are immaterial. No consent of parties could vest the Commissioner with power to try the rights of the parties at any period' anterior to their commencement, as that would be as clearly beyond his statutory powers as the trial by consent of an action of ejectment.

It was suggested, however, in the Court below, that the date to the jurat was a mistake of 1861 for 1864; and the Circuit Judge at first admitted evidence to show this mistake. This evidence seems to me clearly inadmissible. A record must be its own interpreter — *Rood v. School District, etc.* 1 *Doug.* 502; and if it fails to show jurisdiction on its face, it is impossible to sustain it by proof of facts which rest in the recollection or intentions of witnesses. I say nothing now of any amendment or motion to amend; for here there was no attempt of the kind: the naked case was a record offered in evidence which failed to show jurisdiction, and an attempt to sustain it, not by correction, but by parol evidence of a mistake made in drafting it. If this can be done, it is evident that the validity of the record must depend upon the parol· proof; and this same proceeding might be held valid one day, and void the next, if the witness in the mean time had deceased, or his testimony for any other reason become unattainable. It seems to me very clear that such evidence is at war with the fundamental rules which govern the examination of judicial records; and that the Circuit Judge was right in his final conclusion.

2. The second question is of more general importance, and arises under §2807 of Compiled Laws, which provides

that "All estates at will and at sufferance may be deter-
mined by either party, by three months' notice given to
the other party." If Prior, at the time Allen acquired
his right, was tenant either at will or at sufferance within
the meaning of this statute, he was entitled to the notice
specified, and he could not lawfully be deprived of the
possession of the premises, or of the crops grown by him
upon them, until such notice was given.

A tenant at sufferance is defined to be one who, hav-
ing come into possession by right, holds over without right.
*Co. Lit.* 57 *b.* ; 2 *Bl. Com.* 150. A mortgagor whose es-
tate has been terminated by foreclosure proceedings, is
strictly within this definition. — *Kinsley v. Ames,* 2 *Met.*
31. At common law such a tenant was not entitled to
notice, but the owner might enter at any time, and hav-
ing regained possession, sue the tenant in trespass for his
occupation. — *Dorrell v. Johnson,* 17 *Pick.* 266 ; *Butcher
v. Butcher,* 7 *B. & C.* 399 ; *Hey v. Moorehouse,* 6 *Bing.
N. C.* 52 ; *Pearce v. Ferris,* 10 *N. Y.* 283. The posses-
sion of the latter being wrongful, continues only by the
latches of the owner, since, if assented to, the tenancy
ceases to be one at sufferance, and becomes a tenancy at
will or from year to year. — 1 *Washb. on Real Pr.* 394.

It is apparent that the term *tenant at sufferance* can-
not be used in the statute in a sense which would enti-
tle any one holding over wrongfully to the statutory notice,
since that would put it in the power of any occupant to
prolong a wrongful possession indefinitely. It may, there-
fore, be well to look at the decisions under similar statutes
for aid in giving these words their proper construction.

In *Kinsley v. Ames,* 2 *Met.* 29, a mortgagor who had
held over for a month after his right was terminated by
foreclosure, before possession was demanded from him, was
held not entitled to notice, on the ground that the statute
which required notice to tenants at will and at sufferance
had been so amended as to apply to tenants at will only.

In *Rowan v. Lytle*, 11 *Wend.* 620, Savage Ch. J. in giving a construction to a similar statute says: "For the purpose of giving this statute a fair construction and beneficial operation, no notice should be held necessary unless the landlord has unnecessarily delayed his proceedings; and the object of the legislature will be best promoted by holding that such notice is not necessary unless the landlord has permitted the tenancy at sufferance to continue for such a length of time as to imply assent." In that case a tenant for years who asserted some adverse right in himself had held over for two months during some negotiations for a new lease, and was then told he must either take the lease on his landlord's terms or quit the premises. He did not do either, and proceedings were commenced against him six months later. It was held — and it seems to me correctly — that he was not entitled to notice.

The landlord could not fairly be chargeable with laches while the negotiations were pending, and the retention of possession after they had ceased was in the face of the landlord's prohibition. In *Livingston v. Tanner*, 12 *Barb.* 481, a construction was placed upon the statute which seems to me to speak its real intent, and to accomplish the beneficial purpose for which it was enacted. There a tenant *per autre vie* had held over for nearly four months without, so far as appeared, any knowledge that his estate had terminated; and stress was laid upon this fact in holding him entitled to notice. The decision places the right to notice not upon the ground of the owner's assent to the posession, but upon the circumstances existing in the case which rendered it unjust that the tenant should be dispossessed as a wrong doer without warning, when he was not guilty of intentional wrong, and might not even be aware that he was not holding in his own right.

The case last mentioned was reversed by the Court of Appeals — 14 *N. Y.* 64 — on the ground that another

statute of that state had in express terms, made one who held over after the determination of a life estate a trespasser; thereby changing what would otherwise be a tenancy at sufferance into a trespass. The reasoning of the Supreme Court is not only left untouched by the court of last resort, but the Judge delivering the opinion of that court pointed out, very clearly, as I think, that but for the statute last mentioned notice would have been necessary. We have no corresponding statute in this state; nothing that assumes to change the common law relation of a mortgagor holding over after foreclosure perfected.

I think I am safe in saying, under the decisions and on general principles, that whenever the occupant continues to hold by the consent of the owner, he becomes entitled to notice as tenant at will; and that where the owner suffers him to remain in possession without objection, and to make such use of the premises as would render it unjust to demand and enforce possession against him without warning, this laches of the owner entitles him to the statutory notice as tenant at sufferance. There is no wrong and no hardship in this to any one, and it seems to me to accomplish the purpose of the statute.

This construction does not appear to me to conflict at all with the statute which authorizes summary proceedings under chap. 150 of the Compiled Laws, to dispossess a mortgagor who holds over after the foreclosure has become absolute. There is nothing in that provision which warrants us in holding that the position of the mortgagor thus holding over by wrong can not be afterwards changed by the acts or omissions to act of the purchaser. Notwithstanding the statute, it seems very clear to me that if the mortgagor should continue to hold with the purchaser's assent, he would become tenant at will and entitled to notice as such; and it seems equally clear that without actual assent, he may be suffered to remain in

possession under such circumstances as would make the occupancy cease to. be wrongful. There is no doubt of the right of the purchaser to enforce possession under this statute; but to hold that that right continues indefinitely, without regard to laches, or the implications that might arise from suffering the possession to continue, does not strike me as in harmony with the purposes of the statute. The provision for notice to tenants at will and at sufferance is general in its terms, and meant, I think, to include all cases where those relations exist, within the meaning of the statute, and without regard to the nature of the prior relation.

In the present case the truth of Prior's statement, that he was entirely ignorant of the foreclosure proceedings until redemption had expired and Clark had deeded to Allen, is not disputed. That he was grossly negligent in thus failing to look after his interests is very clear, and he could not be allowed to set up his want of notice as a defense to the foreclosure. The statutory notice is conclusive upon him in any question of title. But different considerations present themselves when the question is made whether he shall be treated as a wrong doer. Prior had in the mean time gone on to put in his spring crops, and this labor was fully completed before demand was made upon him for the land. While the law charges the mortgagor with notice of the foreclosure proceedings, and will not allow him to dispute it as a defense to the sale, it is no hardship to the purchaser to hold him constructively notified of the use which is being made of the land, by the expenditure of money and labor, after the sale has become absolute. If without objection he allows the occupant to go on and sow crops on the supposition that he is to be suffered to reap them, he must be held impliedly to assent to the cultivation; or, at least, to be guilty of such laches as equitably to entitle the occupant to the statutory warning before he can be dispossessed.

ALLEN v. CARPENTER.

The precise question before us is this: Whether the purchaser at a mortgage sale, who for three months after his title has become absolute, has suffered the mortgagor to go on without objection in the planting of the land with crops, is entitled then to enforce possession without prior notice, and to reap the benefit of the mortgagor's labor? I think this question must be answered in the negative; and that if the mortgagor, under such circumstances is neither tenant at will or at sufferance, within the statute, it will be difficult to give the statute any construction that will render it of value.

Allen obtained possession from Prior by threats of employing force. The possession thus obtained cannot be regarded as surrendered voluntarily, and would not deprive Prior of his right to the ripened crops. It is suggested that the bill which was filed to set aside the foreclosure for fraud must be regarded in the light of a bill to redeem, and that when that was dismissed, there was an adjudication against Prior's rights. No question of the right to redeem arises here, or of any other right springing from the relation of mortgagor and mortgagee. All such rights are undoubtedly extinguished. The question now is, whether by the implied assent of Allen, a new relation has not been created, under which Prior is protected in the possession until notified to surrender it.

I think the judgment of the Circuit Court should be affirmed.

CHRISTIANCY J. concurred.

CAMPBELL J.

The principal questions arising in this cause are dependent upon the relations existing between plaintiff in error and one Henry Prior, springing out of a mortgage foreclosure and legal proceedings subsequent thereto.

On March 22, 1862, a mortgage made by Prior to one

Elihu L. Clark was foreclosed by advertisement, and a deed executed, the redemption whereon was to expire in one year thereafter. On June 25, 1863, Clark conveyed the land to plaintiff, who, in the beginning of July, 1863, commenced summary proceedings to eject Prior. Before these proceedings could be heard, Prior filed a bill to avoid the foreclosure for alleged frauds and irregularities, and obtained an injunction to stay the legal process. This bill was finally dismissed, July 12, 1864.

Evidence was introduced of a complaint, under the statute regulating proceedings to obtain possession of lands, and a summons issued upon it,— the summons bearing date August 29, 1864,— while the complaint, by a clerical mistake, was stated to have been sworn to, August 29, 1861 ; the mistake being explained by the oath of the agent who verified it. The Court rejected the docket of the Commissioner, showing proceedings to judgment on this complaint, and a writ of restitution issued thereon, and served, on the ground that the docket did not show the year when the proceedings were instituted. The writ of restitution having been used by the proper authorities to put plaintiff in possession, defendants are alleged to have entered with force and removed the standing as well as gathered crops. The Circuit Court, among other rulings, held the legal proceedings void; and held, further, that Prior was entitled to notice before he could be required to surrender possession.

Evidence was introduced tending to prove the premises had been sold on the mortgage, and also by the purchaser at the mortgage sale, for less than their value, but the testimony has no bearing upon any legal question now before us, and was probably introduced with a view to its effect on the jury. There are circumstances which, if we were at liberty to be moved by such considerations, might induce a belief that Prior's land had been sold at a great sacrifice; but, if sold on his mortgage according to law, to the highest bidder, the law

cannot save him from the loss; and his rights of tenancy can in no way be enlarged, because his property brought one sum instead of another. When a party gives a mortgage, whether ample or slender security, he has no right to calculate on any delay beyond its maturity; and cannot set up, against a foreclosure for its breach, any defense arising out of an expectation or hope of lenity, not based on some distinct understanding to that effect. Whatever may be the general disposition of creditors to procrastinate, it would hardly be safe to say that any one must stay proceedings to accommodate such expectations. And when a foreclosure is actually had, the law is very explicit, that the redemption must be made within the appointed time, or the title will become absolute. If there are any elements in the case which affect injuriously the plaintiff's possessory and proprietary rights, this is not one of them.

The principal inquiries, therefore, relate to the question whether, after obtaining an absolute title against Prior by the expiration of the statutory period for redemption, plaintiff or his grantor lost the right to have possession of the estate which they so acquired.

I do not think there is any such defect in the proceedings to oust Prior as renders them invalid. So far as the alleged defects in the docket dates are concerned, I do not regard that record as fatally imperfect. While the date of August 29th is not set opposite any year, the docket shows that a summons was immediately issued upon the complaint, returnable September 2d, 1864; and the summons, produced and proved in connection with it, is dated August 29th, 1864, and is so returnable. The complaint is certified to have been sworn to on August 29th, 1861, but this is explained to have been a mistake. Had there been no appearance before the commissioner, or had there been any objection taken in the proceedings, it is possible this might have been a fatal

error; but I do not deem it necessary to consider this, because Prior appeared on the return day of the summons, and joined issue on a plea of not guilty, without raising any objection to the legality or regularity of the proceedings. The date of the attestation became thereupon entirely immaterial.

Pleadings are always understood to date, as to their allegations, from their actual filing, and that is the only date material upon an issue, and may be shown by parol. *Lester v. Jenkins*, 8 *B. & C.* 339; *Wilton v. Girdlestone*, 5 *Barn. & Ald.* 847; *Granger v. George*, 5 *B. & C.* 149; *Michaels v. Shaw*, 12 *Wend.* 587; *Lyttleton v. Cross*, 3 *B. & C.* 317. Judgment having been rendered against him, he took no steps to remove it, either by appeal or *certiorari*. I do not understand upon what principle he can now attack the judgment collaterally. There is no authority for saying that such proceedings, when a party has gone to trial without objection, are voidable, except in a court of review. And, until reversed, I think the proceedings conclusive.

But I think the rights of the plaintiff would stand equally well without reference to these proceedings.

The Court charged the jury expressly that it was not a trespass in the defendants to enter upon the land and remove the crops, within a reasonable time after plaintiff obtained possession; and that plaintiff had no right in them. And the reason for this broad charge is probably found in the next instruction to the jury, that Prior was not called upon to leave, until, as tenant at sufferance, he had received three months notice to quit, if he was allowed to remain and put in crops until June 23d, 1863, without objection, or any steps to obtain possession. The case shows there was no acquiescence except a mere inaction, without proof of personal knowledge or notice of Prior's operations. The case then, upon this hypothesis—if there were no other facts modifying it — would present

the question whether a mortgagor, holding over three months after his redemption expires, is entitled to notice to quit.

At the common law, inasmuch as a tenant at sufferance was not entitled to notice to quit, it did not become very material what classes of unlawful holding over were called by that name. And there are some authorities which classify mortgagors holding over, as such tenants. But since it has been found expedient to allow notice to tenants at sufferance, it has been found necessary to be somewhat more accurate, and as the law now stands with us, as well as elsewhere, there are either tenants at sufferance not entitled to any notice, or else there are holdings over after the expiration of lawful tenancies, which are something else than tenancies at sufferance. It makes very little difference in the present case which of these results is accepted.

Our statute, allowing tenancies at will and by sufferance to be terminated by notice, inasmuch as it nowhere defines either of these tenures, must be presumed to adopt the common law definition, which, where applicable at all, reaches all cases where a person once having a lawful tenure " *continues after his estate is ended and wrongfully holdeth against another.*" — 1 *Inst.* 57. There is no difficulty in learning when tenancy at sufferance begins. There is no gap between the lawful and unlawful holdings; and when the legal estate ends, the estate at sufferance at once succeeds, if the tenant remains in possession. It is also well settled, that a tenant at sufferance is not a trespasser, unless he attempts to hold over after the landlord re-enters and terminates that peculiar occupancy. — 2 *Bl. Com.* 150 ; *Dorrell v. Johnson,* 17 *Pick.* 263 ; *Butcher v. Butcher,* 7 *B. & C.* 399. The wrong is not criminal, but it is nevertheless by construction of law a wrongful act to retain possession of land a single moment after the right terminates; and there is no middle ground between a

rightful and a wrongful occupancy. If Prior became a tenant at sufferance at all, he became such as soon as his redemption expired; and if entitled to notice at all, it must be that he was so entitled from the beginning, or else it must depend upon the mere arbitrary opinion of a court or jury, unguided by any common law or statute rule, how long the continuance of an unlawful holding, not assented to, must last, before the common law tenancy passes into something . else.

In New York, there is one case which undertook to furnish a rule upon the subject. The statute, there as here, contemplated a notice to terminate a tenancy at sufferance. There, as we shall see is also the case here, the statute in another place used language inconsistent with any right to notice, where certain tenants held over after their terms expired. In *Rowan v. Lytle*, 11 *Wend.* 616, where such a holding over had continued three months and twelve days from the termination of a lease, it was held the delay had not entitled defendant to notice. The court, in attempting to decide what delay would be long enough, lay down this rule. "The object of the legislature will be best promoted by holding that such notice is not necessary, unless the landlord has permitted the tenancy at sufferance to continue *for such a length of time as to imply assent.*" *p.* 620. This language is equivalent to holding, what under the statutes is I think the true rule, that when a tenant, in the cases specified, holds over beyond his term, he can never be entitled to notice unless he has become a tenant at will. For such tenancy always becomes tenancy at will the moment consent can be inferred. And such is Mr. Taylor's interpretation of this very decision. — *Taylor Land. & Ten.* § 65. In other words, until such assent removes the wrong, such a tenant has no rights whatever against the land owner.

Our statutes seem to remove any ambiguity on the subject. The provision concerning notices to terminate

estates at will or by sufferance is permissive in its form, and only declares that all such tenancies *may* be thus terminated. — § 2807 *Comp. Laws.*

The utmost that can be claimed for this is that it covers all such tenancies as are not otherwise provided for. In the chapter concerning summary proceedings for the possession of land, it will be found that certain classes of holding over (including the one now in controversy), are expressly distinguished from such tenancies at sufferance as require notice. — 2 *C. L.* § 4985. Those excepted classes are *first*, cases where persons hold over after the term for which premises are demised is ended, or contrary to the conditions of any lease or agreement; *second*, cases where rent is in arrear after demand of possession; and *third*, where a person continues in possession of premises sold under mortgage or execution, after the redemption has expired. And, after providing for an immediate right of possession in these cases, the statute embraces in a fourth and distinct class, cases "*where any tenant at will, or by sufferance, shall hold over after the determination of his estate by a notice to quit, as provided by law.*"

Here, then, we have the case of a mortgagee holding over, distinguished from such tenancies at sufferance as require notice, in the most unequivocal terms. And even if we could under other circumstances be allowed to regard the tenant's ignorance in fact of the termination of his tenancy, as any reason for affecting the rule, we can have no right to do so under this statute, which is evidently designed to protect all who cannot be supposed to have the means of knowing where their rights end.

The cases excepted from the necessity of notice are all cases where the tenant has full means of information. A man must be supposed to know the terms of his tenure, and therefore a lessee who violates his lease must be held to a knowledge of its violation. A mortgagor must

know, or ought to know, when he is in default; and, if he does not know when his land is sold, he knows where to examine and inquire; and an inquiry once a year, at the registry, can always enable him to find out when he must redeem or vacate possession. Those cases where a tenant cannot be expected to be able to ascertain the determination of his tenancy without notice, are left to be governed by the provisions requiring such notice.

But a court can not, on any safe principle, even where the rule of law is severe, undertake to change it on any imagined ground of hardship. Still less can it be permissible to change a certain and simple rule of law into one dependent on the fluctuating notions of a jury. If we hold that a mortgagor retaining possession is entitled to notice, under any circumstances short of his being a tenant at will, we have no authority of law for holding that he is not entitled to it at once.

There can be no dispute as to when the rightful holding ceases, and none therefore as to the time when the wrongful holding begins. The expiration of redemption is the only point of time when the tenure changes, and then, if ever, the holding by sufferance commences.

In the case of *Livingston v. Tanner*, 12 *Barb.* 481, where a tenant for the life of another held over innocently, after the life estate had, without his knowledge, been terminated, the Supreme Court, moved by the apparent hardship of the case, after a delay of four months before possession demanded, undertook to bring the party within the statute providing for terminating tenancies at sufferance by notice, although there was another statute which declared such persons trespassers. But this decision was reversed by the unanimous opinion of the Court of Appeals; who held that, while the defendant was undoubtedly a tenant at sufferance by the common law, the fact that a statute made special provision for his case showed that this tenancy was thereby removed from its

common law designation, and required no notice to terminate it. — *Livingston v. Tanner*, 14 *N. Y.* 64. And the delay in bringing suit was regarded as entirely immaterial, so long as the landlord had not given his consent to the new occupation, so as to make it a tenancy at will. It was the tenant's duty to leave, whether the landlord desired personal possession or not.

It seems to me clear that under our statute, whether this be technically a tenancy at sufferance, or any other species of wrongful deforcement, it is not such a tenancy as requires notice to terminate it.

It may also be remarked that even if there had been any doubt about Prior's position under the first foreclose-ure, and after the delay referred to, there can be none as to his duty on the dismissal of his bill. It is a well settled rule that a mortgagor can file no bill for relief, which will not be regarded as a bill to redeem; and it is equally settled that the dismissal of a bill to redeem operates as a foreclosure. Prior certainly had notice of the dismissal of his own bill; and there has been no laches since. This confirmed the validity of the first foreclosure. And he could not at once rely on it and repudiate it.

I think, however, as before intimated, that his tenancy was one that required no notice to terminate it, and also that the Commissioner's proceedings to oust him cannot be assailed collaterally.

As these points dispose of the case, it is not necessary to refer to the other errors assigned.

MARTIN Ch. J. concurred.

The court being thus equally divided, the judgment below was affirmed.