## VALENTINE HILSENDEGEN v. THOMAS SCHEICH.

*Tenancy at will—Finding of facts—Conditions precedent and covenants—Notice to quit.*

1. A finding of fact is conclusive if there is evidence in the case tending to sustain it in its entirety; and if there is an absolute want of evidence to sustain any material part of the finding, it is, to that extent,. of no force.

2. A mere agreement by a tenant from month to month to pay rent in advance is a personal covenant, and not a condition precedent to the right of possession, especially if in practice the rent is not always collected in advance; nor can it be construed as a series of successive agreements made at the beginning of each month, for a month's tenancy.

3. Where a lease provides for monthly payments, but does not fix the time for payment, rent is not due till the end of the month; but it is competent to agree that it shall be paid in advance and to make such payment a condition to the vesting of any estate in the tenant.

4. No particular form of words is necessary, in a lease from month to month, to constitute a condition precedent to the vesting of the tenant's estate, but unless the mutual intention that it shall be a condition appears from the langage or circumstances, it will be treated only as a covenant.

5. A tenancy from month to month without other limitation, and determinable at the choice of either party to the lease, is a tenancy at will, and so is a holding over pending negotiations for a renewal of the lease; and the tenant is entitled to notice to quit even if he holds over without paying. How. Stat. § 5774.

6. The common-law definition of a tenancy at will prevails in Michigan in the absence of a statutory definition.

Error to Wayne. (Jennison, J.)   Oct. 23.—Jan. 7.

PROCEEDINGS for possession of land. Defendant brings error. Reversed.

*Atkinson & Atkinson* for appellant. A tenancy is not terminated without notice by non-payment of rent, even if it is payable in advance: *Huyser v. Chase* 13 Mich. 102; *Det.*

*Sav. Bank v. Bellamy* 49 Mich. 317; *Hart v. Lindley* 50 Mich. 20; *Bennett v. Robinson* 27 Mich. 32; but see *Elliott v. Stone* 1 Gray 573 : 12 Cush. 176.

*Griffin & Warner* for complainant appellee. Notice is not needed to terminate a tenancy from month to month: *Gibbons v. Dayton* 4 Hun 451; *Park v. Castle* 19 How. Pr. 32; *Aldhouse v. Goelet* 14 Abb. (N. S.) 130; a tenant may surrender his holding at a given day either by express words or implication: *Bedford v. Terhune* 30 N. Y. 453; 1 Washb. R. P. 354; *Lyon v. Reed* 13 M. & W. 306; *Nelson v. Thompson* 33 Minn. 512; *Smith v. Pendergast* 26 Minn. 319.

CHAMPLIN. J.   The plaintiff in this case seeks to recover possession of certain premises leased to defendant, under How. Stat. § 8295, subd. 1, which reads as follows:

" The person entitled to any premises may recover possession thereof in the manner hereinafter provided, in the following cases: *First.* When any person shall hold over any lands or tenements, after the time for which they are demised or let to him, or to the person under whom he holds, or contrary to the conditions or covenants of any executory contract for the purchase of lands or tenements, or any lease or agreement under which he holds, or where rent shall have become due on any such lease or agreement, and demand of the rent or possession of the premises is waived therein, in writing, and not included in the printed form of the lease or agreement."

The parties requested the circuit judge, before whom the cause was tried without a jury, to file a written finding of facts, and his conclusions of law thereon, which he did, and they are embodied in the bill of exceptions, and are as follows:

" 1. That the complainant in this cause was, at the date of the institution of the cause, the owner in fee of the certain premises described in the complaint herein, and was the owner of the said premises at the time of the original letting of the same, as hereinafter stated.

2. That on or about the first day of November, 1878, the said complainant leased the said premises to the said defendant by a verbal agreement, and that said defendant thereupon entered the possession and has since occupied the same.

3. That the terms of said agreement were that the said defendant should occupy said premises from month to month.

4. That as a condition of said occupancy the sum of fifteen

dollars per month should be paid said complainant by said defendant as rent on the first day of each and every month in advance.

5. That the said defendant occupied said premises under such agreement from month to month, and that such agreement, during the continuance of such occupancy, was not, changed, altered or modified.

6. The rent for the month of July, 1883, was not paid in accordance with such agreement, and that such rent remained unpaid at the time of the commencement of this suit, to wit, on the 11th day of July, 1883.

7. That said complainant and defendant, both previous and subsequent to July 1st, had been negotiating for a new lease of said premises after July 1st, 1883, at an increased rent, but that said parties could not agree as to terms, and that the proceedings herein were commenced immediately after complainant ascertained that he could not reach any agreement with said defendant.

8. That said negotiations were had in view of extensive repairs put upon said premises in May, 1883, which largely increased the rental value of the premises, and that such negotiations commenced in May, 1883, and continued until the time of commencement of this suit.

9. And I do find as conclusions of law as follows:

1st. That said tenancy expired on the 30th day of June, A. D., 1883, and that such tenancy was not thereafter continued, renewed, recognized or kept in force.

2d. That at the time of the institution of this suit the said defendant was in possession of the lands and tenements described in the complaint in this cause, and that said defendant then held the same unlawfully and against the rights of said complainant.

3d. That said complainant is entitled to the restitution of said premises, with costs.

And in response to the request of defendant's counsel for special findings of facts, so far as they may be material or necessary, I do find as follows: That defendant held over said premises after July 1st, until the commencement of this suit, without any right so to do, and that complainant never assented to such holding over, and did not waive his right to proceed or recognize any tenancy after said July 1st, 1883; that defendant's occupancy of the premises after July 1st was under the contract hereinbefore found, which had not been altered, waived, or modified; that the tenancy was from month to month with rent payable on the first day of the

month, strictly in advance; that no written notice was given him for the termination of the tenancy, but that the parties commenced negotiations in May for a new tenancy on a new basis, which had not been effected, and that defendant had promised or offered an increase of rent if he might be permitted to stay after July 1st, which was not accepted by complainant; that rent for June was not paid until July 3d by defendant, and through his default, but that complainant did not recognize an existing tenancy after July 1st; that there was no tenancy from year to year."

Exceptions were taken and filed to the findings of law by the defendant's attorneys as follows:

" To the first finding, that said tenancy expired on the 30th day of June, A. D. 1883, and that such tenancy was not thereafter continued, renewed, recognized or kept in force; to the second finding, that at the time of the institution of the suit the said defendant was in possession of the lands and tenements described in the complaint in this cause, and that such defendant then held the same unlawfully and against the rights of said complainant; and to the third finding, that said complainant is entitled to restitution of said premises, with costs."

The bill of exceptions embraces exceptions taken during the trial to the reception of testimony, and the defendant's attorneys have assigned error in this Court as follows:

"(1) In rendering a judgment for complainant on the evidence in said cause; (2) in rendering judgment for complainant on the facts found; (3) in admitting evidence of repair; (4) in admitting complainant's testimony that defendant before Commissioner Flowers swore he had never received Exhibit B; (5) in finding that the tenancy expired June 30, 1883, and that there was no tenancy after that date; (6) in finding that this was a tenancy from month to month; (7) in finding that the rent was payable in advance; (8) in finding that defendant was entitled to no notice to quit, and was in default when this suit was commenced, and subject to expulsion; (9) in refusing to find the findings of law requested by defendant."

The only question in this case is whether the defendant was entitled to notice before his lease could be terminated? The plaintiff claims that while the holding was from month

to month, it was upon condition that the rent was paid each month in advance, so that such payment became a condition precedent to the vesting of any estate in the defendant for such month; and upon failure to pay such rent in advance the tenancy ipso facto ceased, and if the tenant remained in possession it was an unlawful holding over, which entitled him to obtain possession by summary proceedings under the statute. In this view of the case, it became a material question of fact whether in the contract of renting the payment in advance was made a condition precedent to the enjoyment of the estate. The learned judge so found in his fourth finding of facts, and we are bound to hold this finding of facts correct and conclusive, if there was any evidence in the case tending to sustain it as a whole. But as the evidence is all given in the record, if there be none to sustain this finding, or if any particular and material part of this finding be without evidence to sustain it, then the finding thus far is not binding, and must be held erroneous. *Hubbardston Lumber Co. v. Bates* 31 Mich. 164.

We have searched the record in vain to find any evidence tending to prove that the payment of the rent in advance was a condition precedent to the enjoyment of the estate. We quote from the record all the testimony having any possible bearing upon the point. The plaintiff was called as a witness in his own behalf, and after stating that he was the owner of the premises, and that defendant was in the occupation of them, and had been for about five years, testified as follows:

"*Question.* Who made the arrangements about going in?
*Answer.* I did. In the first place he spoke to Mr. Clemens about renting it, and I asked him who wanted to rent it, and he said Mr. Scheich. I says, He is all right, then I spoke to him.
*Q.* What was said between you and Mr. Scheich?
*A.* That he would have to pay fifteen dollars a month, monthly, in advance. He was satisfied, of course.
*Q.* Fifteen dollars a month, in advance?
*A.* Yes, sir.
*Q.* And did he go in under that arrangement?

*A.* Yes, sir.

*Q.* Do you remember anything being said at any time after that in which any allusion was made to the fact that it was payable in advance; any reference made to it?

*A.* Well, he always paid it regularly; but when I was sick, my clerk, you know, I guess he couldn't,—he got behind when I was sick.

*Q.* Was there any time when you remember of, when Clemens or anybody was present, in which it was referred to that it was payable in advance?

*A.* I told him it was payable in advance. He has told me he was a little hard up for money; he couldn't pay that. Yes, Clemens was present in his own saloon. I said the rent was to be paid in advance.

*Q.* You repeated it over to him?

*A.* He was a little hard up for money. Mr. Scheich then paid the last, and so on. Mr. Clemens and Mr. Scheich were present, as near as I can remember.

*Q.* That talk was to the defendant? ·

*A.* Yes, sir.

*Q.* You repeated that? I understand that you repeated over that fact in dunning him, that he should have paid it?

*A.* Yes, sir.

*Q.* How long was that after he had got behind in that way that you talked to him about it?

*A.* I guess it must have been two or three—I couldn't tell you,—probably two years, or two and a half, and he commenced not paying in advance, regularly.

\*　\*　\*　\*　\*　\*

*Q.* You have already testified that you had an arrangement with Scheich to pay in advance fifteen dollars a month about the first of November, 1878. State to the court whether that arrangement was ever in any way modified or qualified by you; whether you have had any other arrangement with him.

*A.* Never was mentioned whatever in any way. Never have heard a word in any way.

*Q.* Some of your receipts are the latter part of the month and the first of the next month; state how that happened, when you received them yourself.

*A.* I was sick sometimes, three or four times, so finally my clerk collected them. He always paid me, mostly always, in advance, when I collected. He keeps the receipts at home, so he always fetched them back.

*Q.* Here are three or four.

*A.* We were always good friends together. I took the money when I could get it.

*Q.* Mr. Michenfelder, being on the stand, says he had arrangement with you to rent for fifteen dollars a month. I cannot tell exactly what he says, but sometimes he says, from month to month, and sometimes he says from year to year; what do you say about it, any way?

*A.* Well, tell you all I can ever recollect; we talked once.

*Q.* What was said between you?

*A.* There was talk, of course. He says, 'Scheich wants it.' I says, 'I am satisfied with Scheich. Let him pay the rent by the month;' that is all.

*Q.* Did you ever have any talk with Michenfelder about renting it to him—Michenfelder, himself?

*A.* I couldn't recollect.

*Q.* How long was Michenfelder to have this place?

*A.* I never spoke to him about having it any length of time.

*Q.* No agreement made as to time?

*A.* Never.

*Q.* What do you mean to say when you say there was no agreement as to time, because you have testified to it once; what do you mean when you say there is no agreement as to time?

*A.* No; it was by the month,—from month to month.

*Q.* Then there was an agreement as to time?

*A.* That was the understanding.

*Q.* No agreement, you mean, as to any particular time, except from month to month?

*A.* That is all.

*Q.* How long was he to hold it from month to month?

*A.* If he liked it, he could hold it one, two or three months, it is my opinion.

*Q.* Was there any arrangement made how long he could hold it? It was paid by the month?

*A.* By the month, and after that from month to month; we had an agreement to make a lease; we give him a lease; and if there is no lease made, I rent it from month to month or else the man has a lease."

Albert Clemens was sworn for the plaintiff and testified to a conversation with Mr. Hilsendegen, in the presence of Mr. Scheich, as follows:

"Mr. Hilsendegen was over at Scheich's; I was with him. We went over in the evening, I think. Mr. Hilsendegen

said to me that all the rents—in Scheich's presence—that all the rents were payable in advance, and that I should collect his rents of all the tenants; and in the presence of Mr. Scheich it was said in advance, and that was the agreement, and it always had been so, and it was so in his case, too. I quit working for Mr. Hilsendegen about four years ago. Mr. Scheich at that time was not in very long. I don't remember Mr. Scheich saying anything about it. I suppose he understood that it was so. I don't think he was behind at that time. It was just a reference made by Mr. Hilsendegen about how all his payments for rent were made. I afterwards collected from Scheich, among others.

*Q.* Will you state whether, after getting that instruction from Mr. Hilsendegen, in the presence of Mr. Scheich, whether you called on him, and, if so, what time in the month, for rents?

*A.* I called frequently when the rent was due; sometimes the first, sometimes the third, sometimes later; generally the forepart of the month. Sometimes Mr. Scheich wouldn't have it just then.

\*     \*     \*     \*     \*     \*     \*

" It was about two years ago in October that I left Mr. Hilsendegen. It was quite a while before that, that conversation we had; about three or two years before that, about the beginning of the time when I commenced to collect rents. I don't remember that Scheich said anything in reply to the remarks that Hilsendegen made to me. I quit collecting rents from Mr. Scheich on October 11, 1881."

The foregoing is all the testimony offered on the part of the plaintiff tending to prove the terms upon which the premises were leased. The defendant's testimony also tended to prove that the letting was from month to month, at a rental of fifteen dollars a month, without any definite agreement as to the length of time the occupancy should extend. This testimony established the fact that there was but one agreement as to the letting, and not new and successive agreements on the first of each month for another month's occupation; but there is a total absence of any testimony to prove " that as a condition of said occupancy the sum of fifteen dollars per month should be paid said complainant by said defendant as rent on the first day of each and every month

in advance." It is plain to us that the agreement to pay the .rent in advance was mere words of contract, and no more a condition than an agreement to pay the rent at the end of each month would have constituted a condition. If the agreement had been silent as to the time of payment, the rent would not have been due until the end of each month.· It was competent, however, for the parties to agree that the rent should be payable in advance, and also to make such payment a condition precedent to the vesting of any estate in the tenant. And in a lease of this kind no precise form of words is necessary to make a condition, but the intention to do so must be evidenced by such language, taken in connection with the surrounding circumstances, as shows that the parties intended that it should have that effect; otherwise, it will be held to be a covenant. *Langley v. Ross* ante, p. 163.

Here neither the language nor the surrounding circumstances, either alone or conjointly, conduce to prove the condition claimed. There was no agreement that, in case of failure to pay at the day, the landlord should have the right to re-enter; none that if the tenant did not pay he should not occupy; while the surrounding circumstances point strongly to the conclusion that the agreement to pay in advance was intended as a personal covenant. Hilsendegen had been unfortunate in his tenants by failure to collect rents from them. He had recently lost seventy dollars by a tenant leaving without paying the rent. He desired a responsible tenant, and agreed to let the premises to Mr. Michenfelder, a brewer of the city of Detroit, and he could put in possession such tenants as he chose. Michenfelder put Scheich in possession, and paid the rent for a couple of months, and after that, by what appears to be a mutual understanding, Scheich paid his rent directly to Hilsendegen. With the fact that the occupancy was upon condition of paying in advance, which we find unsupported by the evidence, eliminated, the findings show that in or about November, 1878, the complainant leased the premises in dispute to defendant by verbal agreement that the defendant should occupy the premises from month to

month, and pay as rent therefor fifteen dollars a month, on the first day of each month, in advance, and that the defendant occupied under such agreement, and that during the continuance of such occupancy such agreement was not changed, altered, or modified; that the rent for July was not paid in advance, and remained unpaid until July 11, 1883, when these proceedings were commenced, without giving defendant any notice to quit, or that the tenancy was terminated. What was the estate created under the above facts? How. Stat. § 5517, provides that "Estates in lands are divided into estates of inheritance, estates for life, estates for years, and estates at will and by sufferance." It is evident that it is neither an estate of inheritance, for life nor for years, and the inquiry remains whether it is an estate by will or by sufferance.

It was held in *Allen v. Carpenter* 15 Mich. 42, that, as the statute nowhere defines tenancies at will and by sufferance, it must be presumed to adopt the common-law definition. At the common law a tenancy at will is created when a man lets land to another without limiting any certain or determinate estate. Such a tenancy exists when the estate can be determined at the pleasure of either party to the lease. The tenancy found by the learned judge to exist in this case comes strictly within the definition of a tenancy at will. The holding was from month to month, without any limitation as to the time when the estate was to determine. The result is that the defendant was entitled to notice of the determination of the estate. How. Stat. § 5774. From the findings of facts numbered 7 and 8 it appears that the parties, both previous and subsequent to July 1st, had been negotiating for a new lease of the premises after July 1, 1883, at an increased rent, but that they could not agree as to terms, and that the proceedings herein were commenced immediately after complainant ascertained that he could not reach any agreement with defendant, and that these negotiations were had in view of the extensive repairs put upon said premises in May, 1883, which largely increased the rental value of the premises, and that such negotiations commenced in May,

1883, and continued until the time of the commencement of this suit.

It is claimed by complainant's counsel that the effect of making these repairs and these negotiations was to terminate the tenancy on the first of July, and that the parties being unable to agree upon the amount of rent which should be paid thereafter, the complainant had a right to institute these proceedings upon the theory, as evinced by the negotiations and apparent understanding of the parties, that the tenancy had terminated on the first of July ; but such would not be the law in this State upon the facts found in reference to such negotiations.   Anciently, at the common law, a tenant at will was not entitled to notice; the estate ceased at the pleasure of either party, and the tenant might be ejected without demand or notice.   A tenant holding over pending a treaty for a renewal of the lease is a tenant at will (Wood's Landl. & Ten. 34), and hence, under the provisions of the statute above cited, would be entitled to notice.   The statute has altered the common law, and secures to a tenant at will the right to be notified of the determination of his estate.  So that, in either view of the case, it follows that the conclusions of law of the circuit court relative to the estate of the defendant and of his right to notice were erroneous, and

The judgment of the circuit court must be reversed and a judgment entered in this Court for the defendant, with costs of both courts.

The other Justices concurred.