## In re PENNEWELL.

(Circuit Court of Appeals, Sixth Circuit. December 2, 1902.)

### No. 1,038.

1. BANKRUPTCY—PROVABLE DEBTS—DAMAGES FOR BREACH OF COVENANT IN LEASE.

A lessee cannot prove a claim for damages for breach of a covenant for quiet enjoyment in a lease against the estate of his lessor in bankruptcy because of his eviction after the filing of the petition in bankruptcy.

2. LEASE—CONSTRUCTION—COVENANT AGAINST SUBLETTING.

A stipulation in a lease against subletting, in the absence of some provision requiring it, will not be construed as a condition, but as a covenant, the breach of which will not work a forfeiture of the lease, nor authorize a re-entry by the lessor; hence such a stipulation does not render invalid a sublease made in violation thereof, nor give the sublessee a claim against his lessor for damages for false representation in stating that he had lawful right to make the lease.

3. BANKRUPTCY—PROVABLE DEBTS—EFFECT OF ADJUDICATION ON SUBLEASE.

The adjudication in bankruptcy of a lessee does not operate in itself to terminate his lease and end his estate, so as to give a sublessee a claim for damages which can be proved as a debt against his estate.

4. FRAUDULENT REPRESENTATIONS—RIGHT OF ACTION FOR DAMAGES—MICHIGAN STATUTE.

Comp. Laws Mich. § 10,421, which provides a remedy by an action of assumpsit to recover damages for an injury resulting from false representations, and attaches to the liability by implication a promise to pay such damages, merely gives a new remedy, and does not create any new right, or give a cause of action for a false representation before damages have resulted.

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of Michigan, in Bankruptcy.

Adolph Sloman, for petitioner.
Joseph H. Clark, for respondents.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge. On January 29, 1901, the creditors of Charles F. Pennewell, the bankrupt, filed a petition in the district court for the Eastern district of Michigan, praying that he might be adjudged a bankrupt. Later in the same day he filed his voluntary petition in that court for the same purpose. Thereupon he was

adjudicated a bankrupt, and the matter was referred to a referee. The order of adjudication is not shown by the record, and it does not expressly appear upon which petition the order was made, but, as the petition of the creditors was first filed, and was pending, the fair inference is that it was upon that petition, the bankrupt's petition being treated as a consent thereto. At all events, this being a reasonable presumption, if the fact was otherwise it was incumbent on the petitioners to clearly show it in case they claimed any advantage from the suggestion that the order was based on Pennewell's voluntary petition. However, we do not think this material in the view which we take of the case. In the course of the proceedings Rosenwieg & Co. presented to the referee a petition founded on section 63, setting forth, in substance, that on August 15, 1899, they leased from the bankrupt the second floor of a certain department store in Detroit at a stipulated rent for the purpose of carrying on in the name of the lessor the business of the shoe department, with some collateral stipulations for privileges in the conduct of their business therein. By its terms this lease was to terminate May 1, 1901. The lessees were already in possession, and continued to occupy the premises under the lease for the purposes of their business until some time after the adjudication of bankruptcy, when they were dispossessed by the trustee. The lease contained a covenant for quiet enjoyment of the premises, and the petition averred that at the time of making it Pennewell expressly represented to the petitioners that he had good right and lawful authority to grant the lease of the premises, and that they relied upon this representation in becoming a party to it. On October 13, 1900, another lease was given and taken by the same parties of the same premises containing a like covenant and stipulations, and upon the same representation of the lessor, to run from May 1, 1901, to May 1, 1903. Relying upon these leases, the petitioners allege that they had built up a large and lucrative business, and acquired the good will of the public, and they stated that the leases were very valuable to them. But Pennewell himself was only a lessee of the building of which these premises were a part, under a lease from one Hunter, which expired May 1, 1903, the date of the expiration of Pennewell's second lease to the petitioners. The petition further stated that the lease from Hunter to Pennewell contained a stipulation by the lessee that the premises should not be sublet by him without the written consent of Hunter, of which the petitioners were not aware when they took their lease from Pennewell. Thereupon the petition proceeds to state that, subsequent to the time when Pennewell was adjudicated a bankrupt, Hunter, having learned of Pennewell's subletting of this part of the building, forfeited the lease to Pennewell, and claimed the right to re-enter the leased premises. Upon this state of facts the petitioners claimed that they were entitled to prove damages resulting to them from the alleged breach of Pennewell's covenant for quiet enjoyment and from the falsity of his express representation that he had lawful right to lease the premises to them, as above mentioned, and they prayed for an order directing the manner in which their claims and damages "could be liquidated and proved and allowed against said

estate." The trustee demurred to this petition upon the ground (in substance) that the petition did not state or show a debt or claim provable under the bankrupt act. Upon the hearing the referee sustained the demurrer, and dismissed the petition. On review the district judge confirmed the decision of the referee, and upon a petition for review by this court we are now to determine the correctness of the order of the district court.

1. Was the claim made one provable upon the ground that there had been a breach of the covenant for quiet enjoyment contained in the current lease from Pennewell to the petitioners? Under the express provision of section 63 of the bankrupt act [U. S. Comp. St. p. 3447], debts, to be provable, must be such as "are a fixed liability absolutely owing at the time of the filing of the petition." From the preceding statement it appears that the petitioners had been, from the date of their first lease, and were at the date of the filing of the petition for the order adjudging Pennewell bankrupt, and indeed until some time after, in the occupation of the leased premises, and it is not alleged that they had been in any manner disturbed in their quiet enjoyment of them. There had, therefore, been no breach of the covenant, and consequently no claim for damages had accrued. Such a covenant has reference to the future, and is quite distinct from such covenants as relate to existing facts which are broken as soon as made if contrary to the fact. Even if it be assumed that Pennewell's lessor had the right to elect to declare his lease to Pennewell forfeited, he had not done so at the time when the petition for an adjudication of bankruptcy was filed. Whether Hunter had such right we shall consider further on.

2. Was there a claim provable, which could be rested upon the ground of the false representation of Pennewell to his lessees that he had lawful right to make the lease or leases to them? It is true he had made a stipulation in his lease from Hunter that he would not sublet the premises. It was not stipulated, so far as appears, that his violation of this undertaking should forfeit the lease, or give the lessor the right to re-enter, and, as things not stated must be regarded as not existing, we must conclude that there was no provision in the lease that it might be forfeited by subletting the premises. The preponderance of authority is to the effect that such a stipulation by the lessee, in the absence of anything else in the lease leading to a different conclusion, does not forfeit the lease, or give the lessor the right of re-entry. The court leans against forfeitures, and when, as here, the other obligations of the lessee continue, and no special reason is shown for thinking that it was intended that the breach of the stipulation should furnish a reason for breaking up the entire contract, it would seem that the court should not adopt a construction which would impose a penalty, instead of giving a remedy for damages. The authorities, English and American, cited in 18 Am. & Eng. Enc. Law, 369, fully sustain the statement there made that:

"The common-law rule is well settled that a breach by the lessee of his covenants or agreements in the lease does not work a forfeiture of the term in the absence of an express stipulation in the lease or the reservation of a

power of re-entry in case of such breach. The general remedy of the lessor in such a case is merely by action for the recovery of damages. This rule applies in regard to implied covenants, express covenants to pay rent, covenants to pay taxes, covenants not to assign or sublet."

Among those authorities is Hague v. Ahrens, 53 Fed. 58, 3 U. S. App. 231, 3 C. C. A. 426, where, in dealing with a covenant of this kind, it was held that:

"A clause in a lease will not be treated as a condition if it can be construed to be a covenant without doing violence to its terms; and, if the purpose to create a condition or conditional limitation is not expressed in clear, unequivocal language, the clause will be treated as a covenant simply."

And such, we think, is the law of Michigan. Langley v. Ross, 55 Mich. 163, 20 N. W. 886; Pickard v. Kleis, 56 Mich. 604, 23 N. W. 329; Hilsendegen v. Scheich, 55 Mich. 468, 21 N. W. 894; Hanaw v. Bailey, 83 Mich. 24, 46 N. W. 1039, 9 L. R. A. 801. In Hilsendegen v. Scheich, Judge Champlin, delivering the opinion, said:

"And in a lease of this kind no precise form of words is necessary to make a condition, but the intention to do so must be evidenced by such language, taken in connection with the surrounding circumstances, as shows that the parties intended that it should have that effect; otherwise it will, be held to be a covenant."

And in Hanaw v. Bailey, Judge Morse, in concluding his opinion, said:

"There was in this instrument no right of re-entry reserved upon failure to perform the covenants or conditions of the agreement; nor any stipulation therein that a failure to perform should operate as a forfeiture or termination of the lease,"—citing the earlier Michigan cases.

And in 1 Washb. Real Prop. *320 (3d Ed.), after a discussion of the effect of such covenants by the lessee, it is said:

"And it may be stated as a general proposition that courts always construe similar clauses as covenants only, rather than conditions or conditional limitations."

A case much in point is Shaw v. Coffin, 14 C. B. (N. S.) 372. The case of Randall v. Chubb, 46 Mich. 311, 9 N. W. 429, 41 Am. Rep. 165, is not in conflict with this doctrine, for in that case there were certain personal duties to be performed by the lessee, which were of the very substance of the lease, and the presence of such agreements in the lease was the ground on which the decision of the case turned. If the law be as above stated, this stipulation of the lessee did not affect the title under the lease, but was a personal agreement, merely, between Pennewell and Hunter, the breach of which would give a cause of action if damages ensued. It would follow, therefore, that, although Pennewell's subletting was a breach of his covenant with Hunter, such covenant and its breach did not affect the subleases to the petitioners. Moreover, the representation Pennewell is alleged to have made, namely, that he had lawful right to make the lease, amounted to no more than is implied in every such case when the lease is in the common form, and no damages could flow from it so long as the grantee remained in the undisturbed possession and enjoyment of the premises.

It is urged further that the adjudication of bankruptcy consented to by Pennewell ipso facto terminated his lease from Hunter, and put an end to his estate, whereby the leases to the petitioners were defeated, and that, in consequence, they had a claim for damages against the bankrupt's assets. We do not agree to these premises. It might be that the lease from Hunter was a valuable asset of the bankrupt, and, if so, the trustee might regard it as for the interest of the creditors to hold on to it, and convert the leasehold estate into distributable assets. And in the present case the petitioners alleged that the trustee had taken possession of the whole of the premises, and had sold the leasehold interest of Pennewell "subject to the rights of said Hunter" and of the petitioners, as the same should be determined. It may be true that, if the trustee had elected not to adopt the lease and realize its value to the estate, the lease would have come to an end. But we need not pursue that inquiry.

Reference is made to a statute of Michigan which is as follows (Comp. Laws, § 10,421):

"That in all cases where, by the fraudulent representation or conduct of any person, an injury has been or shall be produced, either to the person, property or rights of another, for which an action on the case for fraud or deceit may by law be brought, an action of assumpsit may be brought to recover damages for such injury, and in all such cases a promise shall be implied by law to pay all just damages arising from such fraud or deceit, and may be so declared upon." 3 Comp. Laws, p. 3150.

This statute provides for a remedy by an action of assumpsit for injurious false representations, instead of the action of trespass upon the case, which was the old form of remedy, and attaches to the liability a promise to pay the damages. Since every man is bound to pay such damages, and his obligation is not increased by making a promise, it seems probable that this language was employed to make the ground of the action conform to the theory on which the new remedy had always been regarded as having its foundation. But, however that may be, it is clear that it was not intended to create any new right, or to give a cause of action, before any damages had resulted. If none ever result, there is no injury, and, of course, no action in any form could be maintained. None had resulted when the petition for adjudicating Pennewell a bankrupt was filed, and none might ever arise. And so there was no debt absolutely owing to the petitioners at that time. We need say no more in this connection than to refer to what we have already said in regard to the effect upon the rights of the petitioners of Pennewell's covenant not to sublet in his lease from Hunter.

Perceiving no error in the proceedings of the district court, we must affirm the order complained of.