ADLER, Appellant, vs. MENDELSON, Respondent.

*September 11 — October 15. 1889.*

*Landlord and tenant: Holding over after term.*

The lessee's household goods remained in the house, packed up and ready for removal, for three days after the expiration of the term, the lessor being absent from home and his agent having declined to receive the key of the house and the rent due and having directed the lessee to wait until the lessor's return. The key was promptly surrendered to the lessor on his return and was accepted by him. *Held*, that there was no holding over such as would render the lessee liable as a tenant from year to year.

APPEAL from the Superior Court of *Milwaukee* County.

Action to recover rent. The facts are sufficiently stated in the opinion.

The cause was submitted for the appellant on the brief of *Smith & Rosendale*, and for the respondent on that of *A. G. Weissert.*

For the appellant it was contended that he had a right to treat the respondent remaining in occupation of the premises after the expiration of the term created by the written lease, as his tenant from year to year. A tenant's refusal to renew his lease, and his notice that he will leave at the expiration of the term, do not release him from liability as a tenant from year to year. It is not promising, *but going*, that discharges the tenant. R. S. sec. 2187; *Schuyler v. Smith*, 51 N. Y. 309, 313; *Wolffe v. Wolff*, 69 Ala. 549; *Tolle v. Orth*, 75 Ind. 298; *Conway v. Starkweather*, 1 Denio, 113; *Hemphill v. Flynn*, 2 Pa. St. 144; *Noel v. McCrory*, 7 Coldw. (Tenn.), 623; *Harkins v. Pope*, 10 Ala. 493; *Schnisler v. Ames*, 16 id. 73; *Witt v. Mayor*, 6 Rob. (N. Y. Super. Ct.), 441; *S. C.* 5 id. 248, 261; *Shanahan v. Shanahan*, 55 N. Y. Super. Ct. 339; *Quinlan v. Bonte*, 25 Ill. App. 240; *Marseilles v. Kerr*, 6 Whart. 500; *Bacon v. Brown*, 9 Conn. 334. The tender of the key, if made, does not constitute a surrender. It is merely symbolical. The covenant was to quit and surrender. And occupation after the term is not cured by tender or even acceptance of the key. *Townsend v. Albers*, 3 E. D. Smith, 560; *Bloomer v. Merrill*, 1 Daly, 485; *Marseilles v. Kerr*, 6 Whart. 504. Otherwise the tenant might relieve himself from liability by offering to deliver the key of the front door while holding the place with his goods through the back door. And in the testimony there is not a word about the surrender of the possession. Respondent simply said here is the key and here is the rent, and the agent replied, you had better wait *with the rent* until *Mr. Adler* comes home. Respondent did not offer to leave the key, and certainly had it in his possession for a week thereafter.

TAYLOR, J. This is an action brought by the appellant to recover of the respondent rent for the premises described in the complaint, which is alleged to have accrued after

the 1st day of May, 1888. The evidence shows that the premises had been occupied by the respondent as the tenant of the appellant, under a written lease for five years, commencing on the 1st of May, 1883, and ending on the 1st of May, 1888. The appellant claims to recover for the rent after the 1st of May, 1888, on the ground that the respondent did not deliver up the possession of said premises to the plaintiff at the expiration of the term of said lease, and that the appellant elected to hold the respondent as tenant of said premises from year to year, upon the terms of said lease. The defendant denied any holding over of the leased premises after the expiration of his lease. The material evidence of the respective parties given on the trial may be briefly stated as follows:

The plaintiff testified that he was at the house occupied by the defendant as his tenant on the 28th of April, 1888. That the defendant's wife was there. She said she did not know whether they intended to take the place for another year; that she expected a letter from her husband, who was at the Sault Ste. Marie on business. "I told her that I must leave town that afternoon, and wished to know one way or the other; that, if they should not want to stay, they must let my folks in the store know a day or two before the 1st of May. She said she would let us know by next Monday, the 30th of April. I left town that afternoon," and did not return until the 7th of May.

The defendant's wife testified that, when the plaintiff was at the house on the 28th of April, she said, "My husband will be home to-night or Sunday morning," and she asked, "Where shall I leave the key?" He replied, "When your husband comes back, send the key to the store." "I told him that we should go. . . . 'I leave the house on the 1st of May.'"

The defendant testified that on the 3d or 4th of February, before the 1st of May, 1888, he told the plaintiff that he was

going to Sault Ste. Marie to commence business; that he was going to move there, and that the house would be at his disposal from the 1st of May, when his lease expired; and that the plaintiff then put up a sign on the house that the same was to let. This sign remained on the house on the 1st of May and afterwards. He further testified that all his goods were packed ready to move on the 29th of April, and that they were removed from the house on the 3d and 4th days of May. That on the 30th of April, which was Monday, he went to the plaintiff's store, and offered to pay the rent to the assistant book-keeper, and he told him that *Mr. Adler* had left, and that he had better give the money to Oberndorfer. He was not at the time in the store. "I came round again in the afternoon, and told Mr. Oberndorfer, 'Here is the key, and here is the rent;' that they can rent the house. 'I am moving now.' He declined to take the key or rent, and said, 'You better wait until *Mr. Adler* comes home.' Oberndorfer was the book-keeper. I had paid him rent before,— large sums. When *Mr. Adler* came home on the 6th or 7th of May, I went down in the morning, and says, 'Here, *Mr. Adler*, there is the check, and there is the key.' *Mr. Adler* says, 'Well, that will be a hard thing for me to rent the house.' I says, 'I can't help it.'" The defendant denied that *Mr. Adler* said "he supposed he had to take the key, but he would hold me responsible for the rent;" that he would "rent the place for me as soon as he could."

*Mr. Adler* testified that when the defendant brought him the key and the rent it was on the 8th of May, and that he then told the defendant: "I presume I will have to accept the key of you, but I will try to rent the house for you as well as I can, and as quick as I can, and I shall hold you responsible for the rent."

Mr. Oberndorfer testified, in regard to this matter: "I heard the conversation between plaintiff and defendant

when the defendant brought the key and gave it to *Mr. Adler*. *Mr. Adler* told him: 'I suppose I will have to take the key. I will try to rent the house. I will hold you responsible for what rent we lose.'"

The only material contradiction in the testimony of the respective parties is as to what was said by *Adler* to defendant at the time he paid the rent and delivered the key on the 7th or 8th of May. That the defendant offered the key and the rent to Mr. Oberndorfer on the 30th of April, 1888, and that Mr. Oberndorfer declined to receive them and stated that the defendant had better wait until *Mr. Adler* returned or until he came home, is not contradicted. Nor is it contradicted that defendant had his things packed ready for removal on or before the 30th of April; nor that the goods were removed as early as the 4th of May; nor that the plaintiff had been informed some time in February or March, by the defendant, that he would not want the house after the expiration of his lease on the 1st of May, 1888; nor that the plaintiff had put a sign upon the premises previous to the 1st of May that they were to rent.

Upon this evidence, and under the instructions of the learned court, the jury found a verdict in favor of the defendant, and from the judgment entered upon such verdict the plaintiff appeals to this court.

The learned counsel for the appellant assigns a long list of errors in the court below: *First,* the refusal of the court to submit certain questions to the jury as a special verdict; *second,* in refusing to give instructions requested by the plaintiff; and, *third,* in giving instructions to the jury. In our view of the case, it seems to us wholly unnecessary to consider the exceptions taken by the appellant. Upon the undisputed evidence in the case, it appears to us very clear that the plaintiff failed wholly to make a case against the defendant, and that the learned judge would have been justified in directing a verdict for the defendant. The only

occupancy of the leased premises by the defendant after the expiration of the term of the lease was that his household goods remained in the house, packed up ready for removal, for three days after the 1st day of May, 1888, and that this occupancy was after the agent of the plaintiff had refused to receive the rent due under the lease and to receive the key of the leased premises. This possession was in the absence of the plaintiff, and when no surrender of the key and possession could be made except to the plaintiff's agent; and such agent refused to accept either the key or the rent, and directed the defendant to wait for the return of the plaintiff. The evidence establishes the fact that, before the return of the plaintiff, the goods of the defendant had all been moved from the premises, and that defendant promptly surrendered the key of the premises to the plaintiff on his return, and that the plaintiff accepted the same.

We are very clear that there was no such holding over of the leased premises as would justify the court or the jury in finding that the plaintiff might elect to treat him as a tenant holding over upon the terms of the original lease. We think, as above stated, that the trial court might properly have directed a verdict for the defendant upon the undisputed evidence in the case. It is therefore wholly immaterial what instructions were refused or given to the jury, so long as the verdict was in favor of the defendant.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.