ALEXANDER M. CAMPAU v. CARL H. MICHELL.

*Landlord and tenant—Subletting—Holding over—Estoppel.*

1. Where a tenant has sublet the whole or any part of the leased premises, and the subtenant is in possession at the termination of the original lease, the tenant must remove him, otherwise he will not be in a situation to render that complete possession to which the landlord is entitled; and, unless the entire possession is surrendered, the responsibility of the tenant for rent will continue, although it may have become impossible for him, in consequence of the obstinacy or ill will of the subtenant, and his refusal to quit, to give the landlord full possession.

2. The lessee for a term of years of two stores sublet one of the
stores, and, about a month before the expiration of the lease,
notified the subtenant that he did not desire to take a new
lease, and, if the subtenant desired to retain possession, he had
better see the lessor. The lease expired on Sunday. Prior to
that time, the subtenant had commenced packing his goods.
preparatory to vacating the store. On the following Monday
the lessor's agent came to the store, took down a sign "To.
Rent," which had been placed there by the lessee, and informed
the subtenant that the store had been rented to the lessee.
The subtenant, relying upon such statement, and thinking that.
the lessee did not wish immediate possession, delayed the re-
moval of his goods for a short time. The lessee, on learning
of such delay by being called upon for the payment of a.
month's rent, notified the subtenant, who moved out, and the
keys were surrendered to the lessor on the ninth day after the
termination of the lease. And it is held that this was not such
a holding over as would constitute a new lease by the lessee
for another year.

Error to Wayne. (Hosmer, J.) Argued November 2,
1894. Decided January 22, 1895.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts.
are stated in the opinion.

*Ormond F. Hunt,* for appellant.

*Brooke & Spalding,* for defendant.

Long, J. This cause was tried in the court below
without a jury, and the following facts found:

"1. That the defendant leased of plaintiff on the 8th
day of February, 1889, for the period of three years, two
brick stores, numbers 32 and 34 Cadillac Square, city of
Detroit, and county of Wayne, said term beginning May
1, 1889, the rent being paid in advance in equal monthly
installments of $258.33, payable on the 1st day of each
month during the term of the lease; and at the end of
the term second party agreed peaceably to leave, surren-
der, and yield up said premises to the party of the first
part, his heirs and assigns.

"2. That the rent mentioned in said lease was regularly
paid by the defendant in accordance with the terms of

said lease during the period of the term mentioned therein.

"3. That on March 3, 1892, a written notice was given by plaintiff to defendant that the premises 34 Cadillac Square had been rented to third parties, beginning May 1, 1892; that in February, 1892, plaintiff's agent and defendant had a conversation in which the latter said he would not pay over $1,100 per year rent for 34 Cadillac Square, and the former said he could not rent it for that.

"4. That on the 16th day of March plaintiff notified defendant in writing, as follows:

"'656 Clinton Avenue,
"'DETROIT, MICH., March 16, 1892.

"'Mr. C. H. MICHELL,
"'City.

"'*Dear Sir:* The rent of store number 34 Cadillac Square, under lease to you, dated February 8, 1889, and which expires April 30, 1892, will be $1,400 for the year commencing May 1, 1892, the conditions, etc., to be the same as in the current lease. If you want to keep the store or not, please give me an answer by Saturday, the 19th inst., or tell Mr. Janisse.

"'Yours truly,       ALEX. M. CAMPAU.'

"5. That on March 28, 1892, defendant wrote to Schmidt, his subtenant, hereinafter referred to, a letter of which the following is a copy:

"'DETROIT, MICH., March 28, 1892.
"'Mr. SCHMIDT, ESQ.

"'*Dear Sir:* Please take notice that my lease of store No. 34 Cadillac Square expires May 1, 1892, and, as I do not desire to take a new lease, you had better see Mr. Campau, if you want or wish to keep the store after my lease expires.

"'Yours truly,       C. H. MICHELL.

"On April 6, 1892, plaintiff wrote defendant as follows:

"'April 6, 1892.
"'C. H. MICHELL.

"'*Dear Sir:* At your request, I will say that store No. 34 Cadillac Square is to rent for a term of not less than one year; and if possession is not given to me April 30, 1892, I will take it for granted that you wish to keep the store according to the terms mentioned in my note dated March 16, 1892.

"'Yours truly,       ALEX. M. CAMPAU.'

"On April 11, 1892, the defendant sent by mail, on a postal card, the following reply to the above letter, but said postal card was not received by said plaintiff:

" 'DETROIT, MICH., April 11, 1892.

" 'A. M. CAMPAU, ESQ.,

" 'City.

" '*Dear Sir:* In answer to yours dated April 6, I will say that I have made no request in reference to store No. 34 Cadillac Square, and do not want it any longer than the term of my lease, which expires May 1, 1892.

" 'Very truly yours,

" 'C. H. MICHELL.'

"Defendant had never asked for any terms for leasing said store, except as heretofore stated, and the note was written of April 6 by plaintiff's agent, to please plaintiff.

"6. That some time during the year of 1891 defendant sublet the premises 34 Cadillac Square to one Francis T. Schmidt, and that he continued to occupy said premises as a grocery store, as such subtenant of defendant, but that the rent was always collected by plaintiff of defendant personally, and there were no contract relations between plaintiff and said Schmidt; that some time previous to the 1st of May defendant hung a sign in said premises, 34 Cadillac Square, substantially as follows: 'To Rent. Apply to Alexander M. Campau, 656 Clinton avenue, between five and six p. m.' That said sign remained in the window of said store until Monday, the 2d day of May, 1892, when it was taken down by plaintiff.

"7. That, about April 23 or 24, said Schmidt, relying on the letter of said Michell of March 28, commenced packing and shipping his goods, intending to vacate said store May 1, 1892. He did not vacate on Saturday, April 30, because all his goods were not packed. May 1 was Sunday, and he could not move that day. On Monday, May 2, 1892, he prepared to remove the goods from said store. On the morning of May 2, plaintiff's agent, Janisse, entered the store, and took down the sign above described, and while there saw that preparations were going on for the removal of the goods from the store. Schmidt asked Janisse why he removed the sign, and whether the store had been rented. Janisse replied that it had. Thereupon Schmidt asked whether the party would want immediate possession. Janisse replied he did not know. Schmidt then asked who the new tenant was. Janisse replied that it was Mr. Michell. Said Schmidt, relying on this representation, and thinking that Mr. Michell did not want immediate possession, delayed the removal of his goods for several days, as hereinafter stated.

"8. That defendant did not know that said Schmidt had not surrendered possession until May 5, 1892, when plaintiff demanded rent for May, and at the same time informed him that Schmidt continued to occupy said store. Defendant at once saw Schmidt, and had a conversation, which informed each of the true situation. Schmidt removed his goods from said store as soon as he could, and the keys of said store were sent to plaintiff's office on Monday, May 9, 1892. May 14, 1892, plaintiff returned said keys to defendant, and informed him he could not accept them. Defendant refused to accept the keys, but plaintiff threw them on defendant's show case, and left them there. The holding over by said Schmidt was not intended by him or by said Michell to create a tenancy after May 1, 1892.

"That on the 11th day of July, after this case had been tried in justice's court, a letter was written by Mr. Hunt, counsel for the plaintiff, as follows:

"'DETROIT, July 11, 1892.

"'C. H. MICHELL, ESQ.

"'*Dear Sir:* As attorney for Mr. Campau, I have conferred with Mr. Carpenter, and he has advised that the store premises 34 Cadillac Square be rented. I told him that we considered the premises yours, and that, in case we took possession of it, and any proceeds were received, the same would be credited to your account. I send Mr. Janisse with this note, and, if agreeable to you, you can let him have the keys, and we will do the best we can with the premises upon this basis.

"'Very respectfully,

"'O. F. HUNT.'

"And on the following day a reply was received from Mr. Carpenter, attorney for defendant, a true copy of which is as follows:

"'DETROIT, MICH., July 12, 1892.

"'O. F. HUNT,

"'Care GRIFFIN, WARNER & HUNT,

"'City.

"'*Dear Sir:* I have just looked over your letter of July 11 to Mr. Michell, respecting the premises 34 Cadillac Square. Of course, you understand that we claim that we are not responsible for the rent, and that our surrender of the keys to you under the circumstances is in no manner to be deemed as assent to the position contained in your letter. We certainly think the premises should be rented, as I have heretofore stated.

"'Yours respectfully, W. L. CARPENTER.

"That thereafter, and on the 13th day of July, defendant settled with one Forden for occupying sidewalk in front of said premises, without, however, the permission of any one, for the sum of $35, for rent from June 1, 1892."

On these findings of fact judgment was entered for rent of the store for the month of May at the rate of $1,400 per annum, with interest. The only exception is that the facts found do not support the judgment. Plaintiff brings error, and insists that the judgment should have been for the two months' rent then due.

By the terms of the old lease, the rent was payable monthly in advance, and by the terms of plaintiff's letter of March 16, 1892, the rent was to be paid in the same manner, but at the rate of $1,400 per year. The holding was for less than a month, and it is evident that the defendant did not intend to hold over beyond the year, and create a tenancy after that time. The court found that the holding over by the tenant was not intended by him or by defendant to create a tenancy after May 1, 1892. Plaintiff's counsel, in his brief, lays down the familiar rule that when a tenant enters under a parol lease for a year, and holds over, and when a tenant under a valid lease for years holds over, the law implies a contract on his part to renew the tenancy on the same terms for another year; but the landlord may treat him as a trespasser, or as a tenant holding over upon the terms of the original lease. And the counsel insists that the case falls within the rule thus laid down, whether the holding over was intentional or involuntary; and says that, if the defendant himself had been in actual possession, and held over for the length of time that the subtenant did, no question could arise but that he would have been held for the year. He also contends that the fact that the premises were occupied by a subtenant could make no difference in

the rule, as it was the duty of the tenant to put the sub-tenant out within the term of the former lease.

Taylor, in his work on Landlord and Tenant (section 524), lays down the rule that—

"If he [the tenant] has let the whole or any part of the premises to an undertenant, who is in possession at the termination of the lease, he must get him out, other-wise he will not be in a situation to render that complete possession to which the landlord is entitled; and, unless the entire possession is delivered up, the tenant's responsi-bility for rent will continue, although it may have become impossible for him to give the landlord full possession in consequence of the obstinacy or ill will of an undertenant to whom he has let a part or the whole of the premises, and who refuses to quit; for in such case the landlord may refuse to accept possession, and hold the original tenant liable."

Undoubtedly this is the well-settled rule. *Brewer v. Knapp*, 1 Pick. 332; *Dimock v. Van Bergen*, 12 Allen, 551; *Lubetkin v. Brewing Co.*, 21 Abb. N. C. 304.

The defendant contends that to create a new term the holding over by the tenant must be voluntary, and for his own convenience. This is not the rule laid down by the cases, and we think it would be a very unsafe one. As was said by the court in *Haynes v. Aldrich*, 133 N. Y. 287, 290:

"Such a holding would introduce an uncertainty into a rule whose chief value lies in its certainty. The conse-quent confusion would be very great. Excuses would always be forthcoming, and their sufficiency be subject to the doubtful conclusions of a jury, and no lessor would ever know when he could safely promise possession to a new tenant."

It remains to be seen, therefore, whether the holding over of the subtenant in the present case, and under the circumstances shown by the facts found, can be construed as an election by the tenant to continue the time for another term. His term expired on April 30. On March

28, the tenant wrote the subtenant that the term would expire on May 1, and that he did not desire to renew the lease. April 23 or 24 the subtenant commenced packing and shipping his goods, intending to vacate May 1. April 30 was Saturday. On Monday, May 2, he prepared to move the goods from the store. On the morning of that day, plaintiff's agent entered, and took down the sign, "To Rent. Apply to Alexander M. Campau." He saw that the subtenant was about to move out. The subtenant asked him why he removed the sign, and he said the store had been rented to Michell; and the subtenant, relying upon this, and thinking that Michell did not want immediate possession, delayed the removal for several days. Defendant knew nothing of this until May 5, when plaintiff called upon him for rent. Defendant at once notified the subtenant, who moved out. It is evident that, had the subtenant moved out on Monday, it would have been in time to save any question of holding over. That he did not move at that time appears to have been due to the action of the plaintiff's agent, who led the subtenant to believe that Michell had renewed the lease. In *Scott v. Beecher*, 91 Mich. 592, 593, after stating the rule as to the effect of holding over beyond the time, it was said by this Court:

"An agreement that such holding over should not be so regarded might be shown to rebut the presumption, or there might be such clear indications of an intention to vacate that a holding over for a day would not support the presumption."

We think, in this case, the facts found by the court below show very clearly the intent of the subtenant to vacate, and that he would have vacated but for the interposition of plaintiff's agent. If the landlord should be permitted to prevail under these circumstances, it would be permitting him to have advantage of the wrongful acts of his own agent. *Adler v. Mendelson*, 74 Wis. 464.

It is not contended by defendant but that the court below was right in his conclusion that the defendant could be held for one month. That he found the rent to be at the rate of $1,400 per year instead of the rate under the old lease does not harm the plaintiff, and the defendant is not here complaining, as he did not appeal.

Judgment is affirmed.

McGRATH, C. J., and GRANT, J., concurred with LONG, J.

MONTGOMERY, J. I am of the opinion that the facts show such a holding over as to amount to a renewal of the lease as matter of law.

HOOKER, J., concurred with MONTGOMERY, J.