REVERSED AND REMANDED.

---

ROSALIE FARLEY v. JOHN McKEEGAN ET AL.

FILED MAY 6, 1896.   No. 6298.

1. **Landlord and Tenant:** EVIDENCE OF CONTRACT. The relation of landlord and tenant, like other contract relations, does not necessarily depend upon an express agreement, but may be implied from the conduct of the parties.

2. **Tenant from Year to Year:** EVIDENCE. A general occupancy by one other than the owner of land will be treated as a tenancy from year to year, whenever the reservation of rent or other circumstances plainly indicate an agreement for an annual holding.

3. ———: TERMINATION OF TENANCY. The tenancy can, in such case, be terminated only by agreement, express or implied, or by notice for the time and in the manner prescribed by law.

ERROR from the district court of Cuming county. Tried below before NORRIS, J.

C. C. McNish, J. W. Huntsberger, and Chase & Sloan, for plaintiff in error.

T. M. Franse and P. M. Moodie, contra.

POST, C. J.

This was an action by the plaintiff in error in the district court for Cuming county, who sued to recover $675, the value of 270 tons of hay, which, as therein alleged, was unlawfully converted by the defendants in the summer of 1891. Accompanying the answer, which is in effect a general denial, is a counter-claim for $100 on account of trespass by the plaintiff upon the premises described in the petition. On the trial of the issues thus joined there was a verdict and judgment against the plaintiff below as to her cause of action, and in favor of the defendants on their counter-claim in the sum of five cents, to reverse which this proceeding is prosecuted by the former.

The substantial controversy is the right of possession of the *locus in quo*, to-wit, the northeast quarter of section 26, township 24, range 7 east, in Cuming county. Both parties claimed through Richard Rush, an Omaha Indian, to whom said land was allotted under the provisions of the act of congress approved August 7, 1882. The basis of the plaintiff's claim is a lease under date of July 1, 1891, from Noah La Flesche, who claimed to hold by virtue of a lease executed by said Rush February 16, 1891, and acknowledged August 17 following. On the other hand, it was shown that Richard Rush had left the Omaha reservation some time previous to the allotment of the lands thereof, and that selection was made in his behalf by his brother, Joel Rush. On the third day of May, 1887, Mary Rush and John Webster, guardians of the minor children of the said Joel Rush, then deceased,

executed a lease of the land in dispute to John McKeegan
and John Blenkiron for the period of five years. Richard
Rush, it should be observed, was, at the date last named,
supposed to be dead, and said lease was executed by the
guardians named in good faith, believing that the title to
the property therein described was in the children of his
deceased brother. In the year 1889 or 1890 t'ie said
Richard returned to the reservation, and thereafter col-
lected from the defendants McKeegan and McManus,
who had succeeded to the rights of McKeegan and Blenk-
iron, the annual rental for the premises at the stipulated
rate of $100 per annum, payable May 1 of each year. The
lessees last named took possession upon the execution of
the lease to them in 1887, which possession in them and
their successors in interest, McKeegan and McManus,
continued up to and subsequent to the date of the lease
from La Flesche to the plaintiff. The argument of the
plaintiff is directed mainly to the proposition that there
was no competent proof of a ratification on the part of
Richard Rush of the unauthorized lease executed in be-
half of the children of his deceased brother. That propo-
sition may be conceded without an examination of the
evidence, although it does not necessarily follow there-
from that the judgment complained of is wrong. On the
contrary, it is reasonably certain that the relation of the
defendants toward Rush, the owner of the premises, re-
sulting from the act of the latter in accepting the annual
rental, as above stated, was that of tenants from year to
year, which could be terminated only in the manner pre-
scribed by law, and is a sufficient protection to them in
this action. The relation of landlord and tenant does not
necessarily depend upon an express agreement, but, like
all other contract relations, may be implied from the con-
duct of the parties; and it may be asserted as a rule of
universal application that a general occupancy of land
will be treated as a tenancy from year to year, whenever
the reservation of rent or other circumstances plainly in-
dicate an agreement for an annual holding. (Wood,

Landlord & Tenant, p. 5, and cases cited; 4 Kent's Commentaries, 114; *Jackson v. Wilsey*, 9 Johns. [N. Y.], 267; *Critchfield v. Remaley*, 21 Neb., 178.) As a matter of course, the occupancy of the defendants might, upon the giving of proper notice, have been terminated on the 30th day of April, 1891. But instead of any steps being taken by Rush or others claiming under him toward a termination of the lease, the defendants were permitted to hold over without objections, so far as appears from this record, until the hay in controversy was ready for harvest. The law, from the facts stated, and as to which there is no dispute, implies an agreement for the continuance of the lease for the year ending April 30, 1892. The judgment is therefore

AFFIRMED.