LANDSBERG *v.* TIVOLI BREWING CO.

1. LANDLORD AND TENANT—HOLDING OVER—RENEWAL OF LEASE.
Plaintiff, shortly before the expiration of a written lease, wrote her tenant that she would renew the lease at an increased rental. Defendant's agent replied by telephone that it could not keep the premises at the increased price, but would take its fixtures out as soon as it could, to which plaintiff replied, "All right." Defendant vacated the portion of the premises occupied by it one week after the expiration of the lease, and a subtenant, six weeks after its expiration. *Held*, that, by holding over, defendant did not become plaintiff's tenant for another year.

2. SAME—TENANCY AT WILL—NOTICE TO QUIT.
Under an arrangement that a tenant should hold over after the expiration of a written lease until it could remove its fixtures, where the rent was payable monthly, a full month's oral notice to quit by the tenant was sufficient.

Error to Wayne; Frazer, J. Submitted February 18, 1903. (Docket No. 91.) Decided April 7, 1903.

*Assumpsit* by Isabella Landsberg against the Tivoli Brewing Company for rent. From a judgment for defendant, plaintiff brings error. Affirmed.

*Wilkinson, Post & Oxtoby,* for appellant.
*Duncan C. Beath,* for appellee.

MOORE, J. The following statement of facts is taken, with a few changes, from the brief of counsel for appellant:

"The plaintiff sued the defendant for rent of a store building for the months of July and August, 1901, claiming $45 per month. She recovered judgment for $90 and costs in the justices' courts for Detroit. Defendant appealed the case to the circuit court, where the jury found for the defendant. The plaintiff appeals.

"Isabella Landsberg and her husband (since deceased), on October 3, 1899, leased to the defendant a brick store at the corner of Grand River avenue and Buchanan street for a period of 19 months from and after October 2, 1899. The lease was in writing, in the usual form. It expired, by its terms, May 2, 1901. During the last seven months of the lease the rental was $40 per month. The ground floor of the building was occupied by McVittie & Vincent, subtenants of defendant, as a saloon, and the upstairs flat was occupied by John Mulheron, who was a subtenant of McVittie & Vincent, at a monthly rental of $10.

"On April 18, 1901, the plaintiff wrote the defendant, stating that their lease expired on May 2d, and that she would be pleased to renew the lease with them at the rate of $45 per month (an increase of $5 per month), giving them a three-year lease of the same. The reply to this letter was by telephone, and involves the issue of fact which the trial judge submitted to the jury. Plaintiff testified that defendant's secretary, Mr. Schimmel, called her up, and said 'they could not afford to pay $45 a month rent,' and that she told them she could not take less, and 'they said they would have to keep the building, because the man that was in it owed them a great deal of money.' Mr. Schimmel, on the other hand, testifies that what he said to Mrs. Landsberg was the following: 'We had lost considerable money in the place, and that we could not afford to keep the place at $45; that we had lost considerable money, and we would have to drop it, and we would take our fixtures out as soon as we could. She said she had another offer at $45. I said we could not afford to pay it; we had lost considerable money in that place. She said it was all right.'

"About May 9th (seven days after the expiration of the written lease) Mrs. Landsberg telephoned the defendant, asking why she had not received the usual check. The

defendant answered that they were going to give up the premises and send down the keys. Mrs. Landsberg replied that she would not accept the keys, and that she considered them her tenants. That afternoon the keys were sent to the plaintiff by registered mail. Plaintiff, by her attorneys, at once wrote the defendant, notifying them that, as they had held over possession of the premises, plaintiff considered them her tenants at $45 per month, and would not accept a surrender of the premises, but would undertake to rent for defendant's benefit. It subsequently developed that, although the defendant sent down the keys on May 9th, and vacated the store about that time, the subtenant, Mr. Mulheron, remained in possession of the upstairs portion of the building until June 12th. Mr. Mulheron paid his rent for May to McVittie & Vincent, defendant's sublessees, about May 1st. He paid no rent from June 1st to June 12th. On June 11th defendant's attention was called to this fact by a letter from plaintiff. The subtenant, Mr. Mulheron, did not move out until about June 12th.

" Defendant refused to pay any rent whatever, and after rent had accrued for May and June plaintiff began suit in justices' courts for the amount then due. The bill of particulars in that suit calls for two months' rent at $45 per month, and also for cost of certain repairs, amounting to $27. This suit was discontinued on August 17, 1901, upon defendant paying to plaintiff the sum of $92.75, being $90 for the rent for the months of May and June and $2.75 costs. The receipt given to defendant was a receipt for two months' rent. The premises remained vacant up to September 1st. There is no claim made that there was any acceptance of defendant's attempted surrender of the building.

" On August 19, 1901, this suit was commenced in justices' courts for the rent for the months of July and August, 1901, at $45 per month. At the conclusion of the evidence plaintiff moved for a direction of a verdict, which was refused, and also presented three requests for a like direction, all of which were refused. The questions involved relate to the charge of the court, and are raised by exceptions to his charge as given and to the refusal of plaintiff's requests. The trial judge submitted the case to the jury on the basis of the telephone conversation which was had between Mrs. Landsberg and Mr. Schimmel after receipt by him of her letter of April 18, 1901. The jury evi-

dently found the version of Mr. Schimmel to be correct, and found for defendant."

Plaintiff claimed on the trial and claims here that, notwithstanding Mr. Schimmel's version of the conversation of April 18th, defendant became her tenant by holding over; that, although Mr. Schimmel testified that she said "All right" in answer to his statement that the defendant would not renew after May 2d, and would take out their fixtures as soon as they could, the occupation of the upstairs portion of the building by their subtenant, Mr. Mulheron, for six weeks after May 2d, and after receipt by the defendant of the letters of May 9th and June 11th, and their payment of rent for two months, constituted such a holding over as made defendant a tenant for another year. The theory of defendant is that plaintiff consented to the holding over of the defendant for such time as might be necessary for the purpose of removing its fixtures; that this was not accomplished until May 9, 1901; that the estate thus created was an estate at will; that, no yearly tenancy being contemplated, and the rent payable monthly, it was such an estate as could be terminated by either party giving to the other the notice required by the statute.

Plaintiff's counsel argue for the following propositions:

"1. The plaintiff's right to recover was not based on the telephone conversation in April. It was based on the fact that defendant held over after May 2d.

"2. The holding over of Mulheron, the subtenant, for six weeks after May 2d, was such as to make the defendant, at plaintiff's option, her tenant for another year.

"3. Defendant's holding over for six weeks after receipt of plaintiff's letter of May 9th made defendant liable at the increased rental of $45, instead of $40."

The principal case upon which plaintiff relies is *Mason v. Wierengo's Estate*, 113 Mich. 151 (71 N. W. 489, 67 Am. St. Rep. 461). As we read that case, instead of sustaining the claim of counsel it is an authority for defendant. Justice HOOKER, speaking for the court, said:

"In the absence of qualifying circumstances implying

consent to a holding under some new arrangement, the holding over is a legal trespass, and does not depend upon the intention of the tenant. It is a wrongful holding, whatever the cause, though perhaps not culpable in a moral sense, and the rights of the landlord are definitely fixed by the law. This question was reviewed in *Campau* v. *Michell*, 103 Mich. 623 (61 N. W. 890), and the opinion of the court as there indicated was contrary to the defendant's position in this case. That case was exceptional, in that the defendant's tenant was induced to hold over by the mistake or misconduct of the plaintiff's agent, and the doctrine of estoppel was applied. See, also, *Bradley* v. *Slater*, 50 Neb. 682 (70 N. W. 258). We think that there is uniformity in the decisions against the contention that the intention to vacate as soon as possible can affect the right of the landlord to elect to treat the holding over as a renewal of the lease for a year. It requires some express or implied consent upon his part to a holding over upon other conditions. This is wanting here."

In the present case, according to the plaintiff's version, she refused to renew the lease unless the tenant would pay $5 a month more than it was required to do by the terms of the written lease; and, when she refused to renew the lease for less than $45 a month, she says "the answer came that they would have to keep the building, because the man that was in it owed them a great deal of money;" thereby consenting, according to her statement, to a new arrangement from the written lease. On the other hand, the defendant claims, and the jury found by its verdict its claim to be true:

"We received this letter of April 18th. A few days following after the receipt of that letter I told her that we had lost considerable money in the place, and that we could not afford to keep the place at $45; that we had lost considerable money, and we would have to drop it, and we would take our fixtures out as soon as we could. She said she had another offer at $45. I said we could not afford to pay it; we had lost considerable money in that place. She said it was all right."

It is very clear from the testimony of the plaintiff and the agent for defendant that neither of them understood

the defendant was to continue under the terms of the written lease, but they did understand the holding over was under a new arrangement. See *Campau* v. *Michell*, 103 Mich. 623 (61 N. W. 890). Within a few days after the expiration of the written lease defendant removed its fixtures. In reply to a request from Mrs. Landsberg over the telephone, made May 9th, asking why a check had not been sent her for the rent, she was informed defendant would not continue as tenant, and would send her the keys, which they did that afternoon by registered mail. On June 11th the attorneys for plaintiff called the attention of defendant to the fact that another month's rent was due, and that Mr. Mulheron was still in possession of part of the premises, and that there had been no surrender of possession by the defendant, and threatened to bring suit if the rent for May and June was not paid. Mr. Mulheron, on the 12th of June, vacated that part of the premises occupied by him. Later suit was brought, and the defendant, apparently recognizing that, as it occupied part of the premises until the 9th of May, and Mr. Mulheron occupied them until the 12th of June, it must pay rent for those months, on the 17th of August paid the costs of court and the rent for May and June. As the defendant, three months before this time, had sent the keys to plaintiff, and surrendered that portion of the building occupied by it, and Mr. Mulheron, two months before, had surrendered the possession he had, it is very clear this payment was not made as an acknowledgment that the tenancy continued later than June. As the jury have found that defendant held over, by the express consent of the plaintiff, until it could remove its fixtures, it became at most but a tenant at will. *Benfey* v. *Congdon*, 40 Mich. 283; *Barrett* v. *Cox*, 112 Mich. 220 (70 N. W. 446); *Hilsendegen* v. *Scheich*, 55 Mich. 468 (21 N. W. 894). See *Lane* v. *Ruhl*, 94 Mich. 474 (54 N. W. 175). If, under the arrangement, any notice was required, as the rent was payable monthly, a full month's notice before the 2d day of July was sufficient. 3 Comp. Laws, § 9257. An oral

notice was sufficient. *Fratcher* v. *Smith*, 104 Mich. 537 (62 N. W. 832), and cases cited therein. We think the record shows the tenancy was terminated, and no rent was due to plaintiff.

Judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. CARPENTER, J., did not sit.