ELMER E. SALISBURY, APPELLANT, V. PRESS PUBLISHING
COMPANY, APPELLEE.

FILED JUNE 8, 1906.   No. 14,379.

1. **Master and Servant: APPLIANCES: DUTY OF EMPLOYEE.** Ordinarily,
   it is the duty of an employer to use reasonable care that the
   tools and appliances which he furnishes his employees are rea-
   sonably fit and safe for the use for which they are furnished, but
   this does not relieve the employee from the exercise of his own
   judgment in the use thereof, and if he puts them to a use for
   which they are not designed or furnished, or subjects them to. a
   strain beyond their capacity to bear, and is injured in conse-
   quence, the employer, in the absence of special circumstances, is
   not liable. *Standard Distilling & Distributing Co. v. Harris*, 75
   Neb. 480.

2. **Instructions.** The statute requiring instructions to the jury to be
   in writing has no application to a mandatory direction to return
   a verdict in favor of one of the parties to the litigation.

3. **Directing Verdict.** On the facts stated, *held* that the trial court
   properly directed a verdict for the defendant.

APPEAL from the district court for Lancaster county:
EDWARD P. HOLMES, JUDGE. *Affirmed.*

*Field, Ricketts & Ricketts,* for appellant.

*Halleck F. Rose* and *W. B. Comstock, contra.*

ALBERT, C.

This is an appeal from a judgment in favor of the
defendant in an action for personal injuries. The petition
so far as is material is as follows: "The plaintiff com-
plains of the defendant, for that on and prior to the 8th
day of October, 1903, the defendant was a corporation duly
organized under and by virtue of the laws of the state of
Nebraska, and was extensively engaged in the printing,
publication and circulation of certain newspapers, with its
place of business in the building at the southwest corner of
Thirteenth and N streets in the city of Lincoln, Nebraska;
that the papers, so printed, published and circulated by

57

the defendant were stacked and made ready for transfer
to the postoffice on the third floor of the building occupied
by it, and to facilitate the delivery of its sacks of mail
from the third floor of said building to wagons on the
street, it had theretofore caused to be constructed an iron
chute attached to the south wall of its publishing house,
and extending from the third floor thereof over and across
the sidewalk to the pavement on Thirteenth street of said
city, so that sacks of mail placed in the chute would be
carried by gravity down the inclining chute to wagons on
the street; that said chute was provided with a hinge or
joint at the lot line, whereby that part of the chute that
extended across and over the sidewalk space on the east
side of the building, when not in use, might, by means of
an apparatus operated by a rope, pulley and heavy iron
weight, be turned over and doubled back on that part of
the chute fastened to the building, and when loading mail,
might be extended across and over the sidewalk to wagons
in the street; that on the 8th day of October, 1903, the
plaintiff proceeded to the defendant's place of business at
Thirteenth and N streets in the city of Lincoln to transfer
its sacks of mail to the postoffice, pursuant to orders from
the defendant to plaintiff's employer. When plaintiff
arrived at defendant's place of business, the sidewalk ex-
tension of the iron chute was doubled back, and before the
plaintiff could receive the sacks of mail into his wagon
from the third floor of defendant's building, it was neces-
sary to extend the iron chute over and across the sidewalk
by means of the apparatus provided by the defendant for
such purpose. While the plaintiff was extending said
chute across the sidewalk by means of the apparatus pro-
vided therefor by the defendant, and had his weight on the
rope, and without any fault or negligence on his part, the
apparatus provided by the defendant for raising and ex-
tending said chute gave way, precipitating the heavy iron
weight used in connection therewith upon the plaintiff,
breaking the bone of his right leg between the knee and the
hip so that it protruded through the flesh, thereby seri-

ously and permanently injuring the plaintiff.  *  *  *
Plaintiff further alleges that the apparatus by which said
iron chute carrying defendant's mail sacks to the street
was doubled back or extended over and across the sidewalk
was carelessly, negligently and insecurely constructed by
the defendant, and was made of defective and unsuitable
material for the purposes for which it was used, and the
defendant carelessly, negligently and unnecessarily sus-
pended said heavy iron weight, which fell upon plaintiff,
directly above where plaintiff was compelled to stand to
operate the apparatus in extending the chute over and
across the sidewalk; that the giving way of said apparatus
and the precipitation of said heavy weight upon plaintiff,
resulting in his injury as hereinbefore alleged, was directly
caused by the defective material used, and the negligent,
careless and insecure manner in which defendant con-
structed said apparatus and suspended said heavy weight."

The answer charges that the plaintiff, in attempting to
operate the chute at the time of the accident, was a mere
volunteer or intermeddler, and was assisted by another
intermeddler, without the knowledge or consent of the
plaintiff; that they applied greater force to the rope used
to operate the chute than the appliances provided for that
purpose were intended to bear, and that the accident
resulted in consequence thereof, and from no other cause.
The reply is a general denial.  At the close of the trial
the court sustained a motion to direct a verdict for the
defendant, and the correctness of that ruling is the princi-
pal question now presented by the record.

It is conclusively established that at the time of the
accident the plaintiff was in the employ of a transfer com-
pany, which was under contract with the defendant to
carry the printed-matter ready for the mails from the de
fendant's place of business to the postoffice. The amount of
this matter was so great as to require drays to carry it.
It was no part of the transfer company's duty under the
contract to operate the chute described in the petition.
But, while the chute was generally operated by the defend-

ant's employees, it was a common practice, in case of delay on their part to do so, for the employees of the transfer company, after placing their wagons in position to be loaded, to raise and lower the chute to a position to deliver the mailing matter on the drays at the edge of the sidewalk. The plaintiff had done this on several occasions previous to the accident. On the day of the accident, the defendant notified the transfer company that it had some matter ready for delivery to the postoffice, and the plaintiff was sent in charge of a wagon to receive it. In this instance the matter was not such as could be loaded by means of the chute, but the plaintiff was not aware of that fact. He drove his wagon to defendant's place of business and placed it in position to be loaded by means of the chute; the defendant's employees were not aware of his arrival. He then undertook to extend the movable section of the chute across the sidewalk to his wagon. The movable section of the chute weighed about 200 pounds. It was connected with the other section by a joint, and, when not in use, was folded back upon it, along the side of the building. In order to raise and lower it a rope passed through a pulley overhead, one end of which was attached to the free end of the movable section, the other to a weight of 50 or 60 pounds used as a counterbalance. A rope hung from this weight to the ground, whereby one standing on the ground could raise and lower the movable section. Another rope was also used to overcome the "dead center" when the section was raised to the perpendicular. As the appliances were arranged the force necessary to apply to the rope to raise the chute, in addition to the counterbalance, was less than 50 pounds. When the plaintiff undertook to raise the chute at the time of the accident it had become fastened in some way and he was unable to raise it. A bystander volunteered to assist him, and joined him in pulling on the rope which extended downward from the counterbalance. The pulley broke and the counterweight fell, striking the plaintiff, who had fallen to the ground, breaking his leg.

The plaintiff contends that from the foregoing state of facts, in which we have tried to include every fact favorable to him which the evidence proves or tends to establish, two propositions are deducible: (1) That at the time of the accident he stood in the relation of employee to the defendant, and in attempting to operate the chute was acting within the scope of his employment; (2) that his injury was the proximate result of a negligent omission on the part of the defendant to furnish reasonably safe appliances for the operation of the chute. A large part of the argument on either side is directed to the first proposition. But we do not deem it necessary to go into that question because, were it resolved in favor of the plaintiff, it seems clear to us the plaintiff must still fail. Assuming that the plaintiff's relation to the defendant was that of an employee, then it was undoubtedly the duty of the defendant to see that the appliances furnished him for use in his employment were reasonably safe for the use for which they were furnished. But it is equally true that an employer is not liable for injuries to an employee caused by the unauthorized or improper use of appliances, and that the latter is bound to exercise reasonable care to protect himself from injury. 20 Am. & Eng. Ency. Law (2d ed.), pp. 134-141, and notes. In this case the pulley and its connections were furnished to bear the strain necessary to overcome a weight of about 100 pounds. Owing to the counterweight, a force of 50 pounds applied to the rope hanging from the counterweight would raise the movable section of the chute. The mechanism was simple, and hung in plain sight. The plaintiff was acquainted with it. In view of these facts, when he, a man weighing over 175 pounds, was unable by his own strength to raise the chute, he must have known as a reasonable person that the ropes had fouled or for some other reason the appliance was not in proper working order, and that the combined strength of himself and another man exerted on the rope would subject the pulley and its fastenings to a greater strain than they were calculated to bear. He was in a

position of obvious danger, with the weight which fell on his leg suspended overhead. While it is the duty, ordinarily, of an employer to use reasonable care that the tools and appliances which he furnishes his employees are reasonably safe, the employees are not relieved from the exercise of their own judgment in the use of such tools and appliances, and when they put such tools and appliances to a use for which they are not intended, or subject them to a strain beyond their capacity to bear, and are injured in consequence, ordinarily, no liability· attaches to the employer. *Standard Distilling & Distributing Co. v. Harris,* 75 Neb. 480. In this case, the rope and pulley were furnished to overcome a definite weight. The plaintiff, instead of confining their use to that end, blindly undertook to use them to overcome some unknown force or obstruction interfering with the operation of the chute, and subjected them to a strain many times greater than was required to serve the purpose for which they were furnished. In doing so he acted under no command, but purely on his own volition, and his injury resulted, not from the omission of the defendant to provide a reasonably safe appliance for operating the chute, but from his misuse of the appliance furnished, and his own omission to make reasonable use of his own faculties to guard against injury.

The plaintiff contends that the judgment must be reversed because the direction to return a verdict for the defendant was given orally, and in support of this contention, invokes the statute requiring all instructions to be in writing, unless such requirement be waived. The statute has reference to instructions proper, that is, instructions given to guide the jury in their deliberations when some issue of fact is submitted for their determination. Where there is no such issue to submit, a mere mandatory direction, which is in no proper sense an instruction, is all that is required, and like other rulings of the court may be given orally.

Complaint is also made of the exclusion of certain evidence tending to sustain plaintiff's theory that at the time

of the injury he stood in the relation of employee to the defendant. As we have seen, that relationship may be assumed, and still the record would necessitate an affirmance of the judgment, hence, further notice of this assignment is unnecessary.

What has been said disposes, we think, of all the assignments, and we recommend that the judgment of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.