HELEN ALLOWAY, APPELLANT, v. WALTER AIKEN AND FRETTA AIKEN, APPELLEES.

21 N. W. 2d 495

FILED JANUARY 18, 1946. No. 32008.

*Porter & Porter,* for appellant.

*Charles A. Fisher,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action for unlawful detention by the defendants of certain rooms in the residence property of the plaintiff located in Crawford, Nebraska. The complaint, in substance, is as follows: That on or about September 7, 1944, plaintiff leased certain rooms in her residence property to the defendants by a verbal lease from month to month, for the sum of $45 per month, subject, however, to the plaintiff's right to jointly occupy and have access to the rooms, and certain other covenants agreed upon orally by the parties governing the occupancy of the property which, it is charged, defendants violated; that more than 30 days prior to January 7, 1945, plaintiff exercised her legal right to end the verbal lease by giving notice to defendants that the lease would stand canceled and annulled from and after January 7, 1945, and that they should vacate the premises on or before that date; that the defendants refused to vacate the premises pursuant to the notice; that on January 9, 1945,

the plaintiff served upon the defendants a written notice to vacate the premises within three days after date of service thereof, which period fully elapsed and terminated, and the defendants still unlawfully and forcibly detained possession of the premises.

The case was tried before the jury in the justice court, and a verdict of guilty was returned. The defendants perfected their appeal to the district court where the case came on for trial upon the pleadings in the justice court, by agreement of the parties. After the introduction of evidence for plaintiff and defendants, the court instructed the jury to return a verdict finding the defendants not guilty in manner and form as alleged in the complaint, to which the plaintiff excepted. Motion for new trial was overruled. The plaintiff appeals.

For convenience, the plaintiff will hereinafter be referred to as the appellant and the defendants as the appellees.

The appellant contends the court erred in orally instructing the jury to return a verdict for defendants and against the plaintiff; that section 25-1111, R. S. 1943, provides in part: "It shall be the duty of the judges of the several district courts, in all cases, both civil and criminal, to reduce their charges or instructions to the jury to writing, before giving the same to the jury, unless the so giving of the same is waived * * * ."

The foregoing provision of the statute has no application to a mandatory instruction to return a verdict in favor of one of the parties to the litigation. See Salisbury v. Press Publishing Co., 76 Neb. 849, 108 N. W. 136, wherein the court discussed the statute which is now section 25-1111, R. S. 1943. The court, on page 854, said: "The plaintiff contends that the judgment must be reversed because the direction to return a verdict for the defendant was given orally, and in support of this contention, invokes the statute requiring all instructions to be in writing, unless such requirement be waived. The statute has reference to instructions proper, that is, instructions given to guide the jury in their deliberations when some issue of fact is submitted for

their determination. Where there is no such issue to submit, a mere mandatory direction, which is in no proper sense an instruction, is all that is required, and like other rulings of the court may be given orally." The appellant's contention is without merit.

The appellant further contends that the district court was in error in refusing to submit the case to the jury, for the reason that the evidence was sufficient to make a case for the jury.

The record discloses that prior to September 7, 1944, the appellees contacted the appellant with reference to renting a part of her residence property and using another part thereof jointly with her. The appellant informed them that she had been offered $55 per month for the rooms. The parties finally agreed that the appellees would occupy the premises for one month for $40, and after the appellee, Fretta Aiken, went to work, the rent would then be $45 per month. The appellant left the city for a while on business, and returned shortly after the appellees had moved into her premises. She noted certain damage which had been done during her absence. She left again and returned shortly, and lived in the house with the appellees, jointly sharing certain rooms. Difficulty developed between the parties, and the appellant informed the appellees that they had only 11 days lease, and the time would be up in 11 days, and she would see what she could do by law. The appellees informed her that they were there for the duration of the war, and she could not put them out. On October 24, 1944, the appellant told the appellee, Walter Aiken, she would like to have the house, and was again informed by them that they were there for the duration of the war, and she could not put them out. Thereafter, in November, there was still difficulty between the parties, and the appellant told the appellees they could get out if they did not like her style, and that they couldn't get out too soon. The appellees said they would move, and brought in packing boxes for such purpose, in the latter part of November or the fore part of December. The appellant claimed she relied upon their promise

to move. When the appellees left on furlough, on December 23, 1944, there was a controversy with reference to the rent, as to whether or not the appellant would accept it, and if it should be paid by the week or month. It was agreed that the month's rent would be paid, and a refund made by the appellant in the event all of the rent was not earned. Prior to the time of the appellees leaving on furlough, the appellant spoke to them about moving when they came back. They had taken a number of things from the premises and she asked them to take the rest, and Fretta Aiken said: "Well, yes, Walter has to see a man yet tonight before we leave town." The appellees returned January 8, 1945. The appellant took them in, and gave as her reason therefor that she thought they would go back to work and move that day. The appellant said to Walter Aiken: "I thought you were moving" and he said to her: "I came to pay you. I want to pay you your rent." She said: "I can't let you have the house any longer. I have to have it and don't want the rent," and did not accept it.

The appellee, Walter Aiken, testified that on December 7, 1944, he spoke to the appellant about getting a furlough for Christmas, and on December 16, 1944, she informed the appellees she had decided to rent her apartment in the back to another party—she was going to live with some relatives—and the new renters would take care of the premises; and when he was paying the rent, the appellant informed him that after the first of the year he would have to pay $50 per month and furnish the fuel for both stoves, or find some other place to live. He told her he could not afford it. When he returned from his furlough he was carrying some of his belongings into the house, and the appellant stopped him and told him there was no use to bring them in, she would let them stay that night, but in the morning they would have to find another place to live. He told her he did not know where to move, and she informed him the hotel was open.

Appellant's evidence in rebuttal, with reference to the payment of rent by appellees from December 7, 1944, to

January 7, 1945, is in effect that the appellees promised to move and she did not want to accept the rent, and finally it was the understanding that appellees would move, and pay the rent by the week, and the appellant would return the unearned rent when they surrendered the premises. She denied that she informed them they would have to pay $50 a month and furnish the fuel, or move.

The tenancy in the instant case is a month to month tenancy. The rent was paid on September 7, 1944, and on the same date each month, in advance.

Section 27-1401, R. S. 1943, provides a remedy in a case for repossession of premises lawfully taken but unlawfully detained. See Gregory v. Pribbeno, 143 Neb. 379, 9 N. W. 2d 485.

Section 27-1404, R. S. 1943, imposes a duty on a party desiring to commence an action for forcible entry and detention to notify the adverse party to leave the premises for the possession of which the action is about to be brought. This notice shall be served at least three days before commencing the action by leaving a written notice with such adverse party.

In the instant case the three-day written notice was served upon the appellees on the 9th day of January 1945, to vacate the premises within three days from such date. The action of forcible entry and detention was instituted in the justice court on January 13, 1945. It is noted, the three-day written notice properly fixed a definite date from and after which the tenants would be required to surrender possession of the premises. See Connell v. Chambers, 22 Neb. 302, 34 N. W. 636; Hawley v. Robeson, 14 Neb. 435, 16 N. W. 438.

This court held in Farley v. McKeegan, 48 Neb. 237, 67 N. W. 161, that a tenancy from year to year may be terminated only by agreement, express or implied, or by notice for the time and in the manner prescribed by law. See, also, Bailey v. Lund, 134 Neb. 319, 278 N. W. 506, wherein this court held: "A tenancy from year to year may be terminated at any time without notice by agreement." See,

also, Critchfield v. Remaley, 21 Neb. 178, 31 N. W. 687; Marshall v. Casteel, 143 Neb. 68, 11 N. W. 2d 818.

While the foregoing cases involve a tenancy from year to year, and an agreement made with reference to the termination of such tenancy, the rule would be no different with reference to a month to month tenancy.

In Dame, Nebraska Inferior Court Practice, (2d ed.) s. 543, p. 522, and Dame, Nebraska Inferior Court Practice, 1918, s. 529, p. 497, it is stated that, by agreement of the landlord and tenant, a tenancy from month to month may be terminated.

We believe in the instant case there are sufficient facts to submit to the jury on the question as to whether or not an agreement was made whereby appellees agreed to surrender and vacate the premises. In the event such an agreement was not made, then the question as to the sufficiency of notice to quit would be involved.

Section 27-1404, R. S. 1943, makes no specific requirement with reference to notice other than the three-day written notice as contained therein. In the absence of any further requirement, oral notice is sufficient, provided it is absolute and states the time which is properly on the first day after the 30-day period ends. Freed v. Collins, 169 Iowa 359, 151 N. W. 471; Landsberg v. Tivoli Brewing Co., 132 Mich. 651, 94 N. W. 197; Searle v. Powell, 89 Minn. 278, 94 N. W. 868; Dame, Nebraska Inferior Court Practice, (2d ed.) s. 778, p. 766.

Applying the 30-day notice as required by the foregoing authorities to the instant case, the evidence is in conflict as to whether or not such oral notice was given on or before December 7, 1944, to appellees to vacate the premises January 7, 1945.

There is likewise a controversy in the evidence as to whether or not certain other covenants of the oral lease were violated by the appellees during their tenancy. In this connection, "A failure of the lessee to keep and perform certain covenants and agreements therein contained, relating to the use and care of the property, and affecting the

value of the estate, authorize the lessor to bring such action when a breach of such covenant on the part of the lessee has procured, though the lease has not terminated by efflux of time, involving a covenant against waste." Dame, Nebraska Inferior Court Practice, (2d ed.) s. 544, p. 523.

For the reasons given in this opinion, the judgment of the district court is reversed and the case is remanded for further proceedings.

REVERSED AND REMANDED.